## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN COLLINS, on behalf of himself and all others similarly situated, | Case No. 1:23-cv-2219 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| PEARSON EDUCATION, INC., | |
| Defendant. | |

## I.    <u>INTRODUCTION</u>

1.      This case arises from Defendant Pearson Education, Inc.'s surreptitious disclosure of its subscribers' personally identifying information in violation of the Video Privacy Protection Act (the "VPPA"), 18 U.S.C. § 2710.

2.      Specifically, Pearson uses a "Pixel" tracking cookie to disclose to Meta Platforms, Inc., ("Meta, formerly known as Facebook ("Facebook")) a record of its digital subscribers' identities side-by-side with the specific videos its digital subscribers requested or obtained. Pearson does so without the subscribers' "informed, written consent." *Id.* § 2710(b)(2)(B).

3.      Plaintiff John Collins ("Collins" or "Plaintiff") is a victim of Pearson's misconduct. Pearson disclosed to Facebook Plaintiff's personally identifiable information, including his Facebook ID ("FID"), along with specific video titles and the videos' URLs identifying specific videos Plaintiff requested or obtained (together, "Personal Viewing Information"). He brings this case as a class action, seeking damages and equitable relief on behalf of himself and all others similarly situated.

## II.    <u>PARTIES</u>

4.      Plaintiff John Collins is a Pearson subscriber who resides in Illinois.

5.       Defendant Pearson Education, Inc. ("Pearson" or "Defendant") is a Delaware corporation with its principal place of business in New Jersey. Its headquarters is located at 221 River Street, Hoboken, NJ 07030.

## III.    JURISDICTION AND VENUE

6.       This Court has personal jurisdiction because Pearson consented to exclusive jurisdiction of courts located within the County of New York, State of New York for claims brought by its subscribers, including Plaintiff.

7.       This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

8.       Venue is proper in this Court because Pearson's Terms of Use require that an action against it such as this one be brought within the geographic bounds of this district. *See* 28 U.S.C § 1391(b)(3).

## IV.    FACTUAL ALLEGATIONS

### A.     Background of the VPPA

9.       The VPPA generally prohibits the knowing disclosure of information which identifies a consumer as having requested or obtained specific video materials or services. 18 U.S.C. § 2710(b)(1).

10.      Under the statute, the Court may award actual damages (but not less than liquidated damages of $2,500.00 per violation), punitive damages, equitable relief and reasonable attorneys' fees and other reasonably incurred litigation costs. *Id.* § 2710(c)(2).

11.      The VPPA was initially passed in 1988 to protect the privacy of individuals' and their families' video rental, purchase, and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses

and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

12.     Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials. As Senator Patrick Leahy and the late Senator Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." *Id.* at 7-8.

13.     In proposing the Video and Library Privacy Protection Act (later codified as the VPPA), Senator Leahy stated that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our own homes. And it protects the selection of books that we choose to read." 134 Cong. Rec. S5399 (May 10, 1988). Thus, the personal nature of such information and the need to protect it from disclosure inspired the statute: "These activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id.*

14.     These statements rang true in 1988 when Congress passed the VPPA, and even more so today, in the modern era of data mining and online video content in which most Americans partake. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,'

mobile apps and other new technologies have revolutionized the availability of Americans' information."[1]

15.    In this case, Defendant chose to deprive Plaintiff and class members of their rights under the VPPA by systematically disclosing their Personal Viewing Information to Facebook, without providing informed, written consent.

**B.    Pearson is one of the world's largest publishers and offers pre-recorded video content through its website.**

16.    Pearson is one of the largest education publishers in the world.  In addition to publishing and selling a wide variety of print products, it also offers and sells extensive digital products.  One such product is Pearson+, which is accessible from https://www.pearson.com/en-us/pearsonplus.html.  Pearson + offers a wide range of services, including electronic textbooks and on-demand, pre-recorded educational videos.  Among the Pearson products found on www.pearson.com are the Pearson+ Channels, which offer pre-recorded educational videos from tutors, personalized for specific college courses.  Pearson also offers other digital services aside from Pearson+ with pre-recorded video content.

**C.    Pearson embedded the Pixel on its website, thereby knowingly disclosing its subscribers' personal viewing information to Facebook.**

17.    Pearson intentionally deploys the "Meta Pixel" or "Pixel" on its website to send its subscribers' personally identifiable information to Facebook.

**1.    The Meta Pixel Tracker**

18.    Facebook introduced its Pixel tracking tool in 2013 to allow online businesses like Pearson to track the actions of their customers on their respective websites and to build detailed,

---

[1] *See* Statement of the Honorable Patrick Leahy, United States Senator, January 31, 2012, https://www.judiciary.senate.gov/imo/media/doc/leahy_statement_01_31_12.pdf    (last    visited March 7, 2023).

valuable profiles about them.[2] Once activated, the Meta Pixel "tracks the people and type of actions they take,"[3] including each page users' visit, what buttons they click, as well as specific information that users input into a website.[4]

19.     Facebook explains to companies like Pearson that installing the Pixel allows them to "track Facebook ad-driven visitor activity on [their] website" and enables Facebook "to match . . . website visitors to their respective Facebook User accounts."[5]

20.     Once a company like Pearson has installed the Meta Pixel on its website, the Pixel tracks users as they navigate through the website and logs a variety of information designated for tracking by the company, including pages visited, any website "buttons" they click, the specific information entered in forms (including personal information), as well as "optional values."[6]

21.     During the installation process, Pearson chose certain options from a menu of available "events" that track specific user activity on Pearson's website for automatic disclosure to Meta, including personally identifiable information such as a user's name, email, phone number, and as relevant here, the FID, a unique and persistent identifier Facebook assigns to each Facebook user.  Pearson chose for its website to disclose to Facebook its subscribers' unencrypted FIDs within a "c_user cookie."

22.     Any ordinary person who has access to this FID can use this identifier to quickly and easily locate, access, and view a user's corresponding Facebook profile, as well as the specific video content the user requested on Pearson's website. One simply needs to log into Facebook,

---

[2] https://developers.facebook.com/docs/meta-pixel/, last visited March 7, 2023.
[3] https://www.facebook.com/business/goals/retargeting, last visited March 7, 2023.
[4] https://www.facebook.com/business/help/742478679120153?id=1205376682832142, last visited March 7, 2023.
[5] https://developers.facebook.com/docs/meta-pixel/get-started, last visited March 7, 2023.
[6] https://developers.facebook.com/docs/meta-pixel/, last visited March 7, 2023.

and type www.facebook.com/[unencrypted FID/ to identify the user. For example, Mark Zuckerberg's FID is reportedly the number "4," so logging into Facebook and typing www.facebook.com/4 in the web browser retrieves Mark Zuckerberg's Facebook page: www.facebook.com/zuck, and all of the additional personally identifiable information contained therein.

23.     Pearson could easily program its website to ensure that this information is not disclosed to Facebook.

**2.     Pearson uses the Meta Pixel to disclose digital subscribers' Personal Viewing Information from Pearson's website to Facebook.**

24.     Pearson embedded the Meta Pixel on its website to disclose its subscribers' identities and video viewing histories to Meta.



25.     In the example above, user "John Roe" is requesting or obtaining Defendant's video titled "Introduction to Accounting – Types of Accounting."[7]



26.     As can be seen above, when a user clicks on and requests a video on relevant portions of the Pearson website, Pearson discloses to Meta whether a video was requested (in contrast to the user requesting non-video material), the specific video name that the digital subscriber requested, the URL, and the digital subscriber's FID to Facebook in a single transmission.

27.     The FID is displayed in the "c_user" code.   In this example, the code is 100089934521623.   The disclosure of the FID is coupled with the title of the video the subscriber requested or obtained along with the URL for the video:

---

[7] For purposes of demonstrating in this complaint Pearson's practice of disclosing consumers' personally identifying information, Plaintiff created and used an exemplary account for "John Roe."



**Video Name =**

:path: /tr/?id=936995542982585&ev=SubscribedButtonClick&dl=https%3A%2F%2Fwww.pearson.com%2Fchannels%2Ffinancial-accounting%2Fle
arn%2Fbrian%2Fch-1-introduction-to-accounting%2Ftypes-of-accounting%3FCEP%3DChannels&l=&if=false&ts=1677798225866&cd[button
Features]=%7B%22classList%22%3A%22aXpenI%22%2C%22destination%22%3A%22id%22%3A%22%2C%22id%22%3A%22%2C%22imageUrl%22%3A%22%2Fchannel
s%2Fimages%2FPlay.svg%22%2C%22innerText%22%3A%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22button%22%2C%22type%22%3Anul
l%2C%22name%22%3A%22%2C%22value%22%3A%22%2C%22%7D&cd[buttonText]=&cd[formFeatures]=%58%5D&cd[pageFeatures]=%7B%22title%22%3A%22
2Types%20of%20accounting%20Video%20Tutorial%20%20%26Practice%20%7C%20Pearson%2B%20Channels%22%7D&sw=1920&sh=1080&v=2.9.97&r=st
able&ec=4&o=30&cs_est=true&fbp=fb.1.1674145599937.165819703&it=1677798128510&coo=false&es=automatic&tm=3&rqm=GET

**Digital Subscriber's FID =** C_user=100089934521623

28.    Any person can specifically identify the user requesting or obtaining the Pearson
video titled "Introduction to Accounting – Types of Accounting" by simply entering
facebook.com/100089934521623 into their search bar.  On pressing enter, John Roe's Facebook
page automatically appears.



29.    Pearson violates the VPPA by knowingly disclosing subscribers' FIDs, together with the specific video materials they requested or obtained, to Facebook.

**D.    <u>Pearson does not obtain consent from its various digital subscribers to disclose their Personal Viewing Information to Facebook.</u>**

30.    When opening an account, Defendant does not inform its digital subscribers that their Personal Viewing Information and FID will be shared with Facebook, and Defendant does not ask its digital subscribers to consent to such information sharing.

31.    As is the case at the time of registration, digital subscribers are not provided with any notification that their Personal Viewing Information is being shared when they log-in to their Pearson account and request or obtain specific videos. Defendant also fails to obtain digital subscribers' written consent to collect their Personal Viewing Information "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," as the VPPA requires.

32.    Defendant does not seek or obtain its digital subscribers' consent (in writing or otherwise) before surreptitiously disclosing their Personal Viewing Information to Facebook.

### E.    Plaintiff's Experience

33.    Plaintiff John Collins has been a Pearson subscriber at all relevant times. Plaintiff Collins became a Pearson digital subscriber by registering for an account and providing, among other information, his name and email address to Pearson.

34.    At all times relevant hereto, Plaintiff Collins has had a Facebook account. Plaintiff Collins has requested or obtained video materials and/or services through Pearson.com.

35.    Pearson disclosed to Facebook Plaintiff Collins' FID coupled with the specific title of video material and/or services he requested or obtained and URLs to access those videos.

36.    Each time Pearson knowingly disclosed Plaintiff Collins' Personal Viewing Information to Facebook, it violated his rights under the VPPA.

37.    Plaintiff has never consented, agreed, authorized, or otherwise permitted Defendant to disclose his Personal Viewing Information to Facebook.

38.    Defendant has never provided to Plaintiff any written notice that it had disclosed his Personal Viewing Information, or any means of opting out of such disclosure. Defendant nonetheless disclosed Plaintiff Collins' Personal Viewing Information to Facebook.

## V.    CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this lawsuit pursuant to FED. R. CIV. P. 23 on behalf of the following class:

40.    All persons in the United States who subscribed to Pearson, requested or obtained video materials or services on Pearson's website, used Facebook during the time the Pixel was active on Pearson's website, and whose Personal Viewing Information Pearson disclosed to Facebook.

41.    The "Class Period" is from March 15, 2021 to the present.

42.    Excluded from the Class are: (a) Pearson and its employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; (b) class counsel and their employees; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

43.    *Numerosity.* The Class is so numerous that individual joinder is impracticable. Pearson has millions of subscribers using Pearson+ alone, many of whom have requested specific video content *See* Emily Bamforth, *Pearson+ claims 2 million registered users since launch in July*, EDSCOOP (Oct. 18, 2021), https://bit.ly/3X0blRQ. On information and belief, Pearson disclosed the personal viewing information of all of those subscribers to Facebook in violation of the VPPA. The Class therefore contains millions of class members—far too many for individual joinder.

44.    *Typicality.* Plaintiff's claims are typical of the Class he seeks to represent. Plaintiff, like all class members, had his personal viewing information knowingly disclosed to Facebook by Pearson without his informed written consent. Plaintiff's claims arise out of the same conduct and are based on the same legal theories as those of any absent class members.

45.    *Adequacy of Class Representative.* Plaintiff will fairly and adequately protect the interests of the Class. He is aware of his duties to absent class members and is determined to faithfully discharge his responsibility. Plaintiff's interests are aligned with (and not antagonistic to) the interests of the Class.

46.    *Adequacy of Counsel.* In addition, Plaintiff has retained competent counsel with considerable experience in privacy class actions and other complex litigation. Plaintiff's counsel have done substantial work in identifying and investigating potential claims in this action, have

considerable knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class.

47.     *Commonality and Predominance.* This case presents numerous questions of law and fact with answers common to the Class that predominate over questions affecting only individual class members. Those common questions include:

a.    Whether Defendant disclosed class members' Personal Viewing Information to Facebook;

b.    Whether Defendant's disclosure of class members' Personal Viewing Information to Facebook was knowing under the VPPA;

c.    Whether the information disclosed to Facebook concerning class members' Personal Viewing Information constitutes personally-identifiable information under the VPPA; and

d.    Whether class members are entitled to compensatory damages and equitable relief as a result of Defendant's conduct.

48.     *Superiority and Manageability.* A class action is superior to individual adjudications because joinder of all class members is impracticable, would create a risk of inconsistent or varying adjudications, and would impose an enormous burden on the judicial system. The amount-in-controversy for each individual class member is likely relatively small, which reinforces the superiority of representative litigation. As such, a class action presents far fewer management difficulties than individual adjudications, preserves the resources of the parties and the judiciary, and protects the rights of each class member.

49.     *Injunctive Relief.* Plaintiff also satisfies the requirements for maintaining a class under Rule 23(b)(2). Defendant acted on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

50.    *Particular Issues*. Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). His claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

## FRAUDULENT CONCEALMENT AND TOLLING

51.    The applicable statutes of limitations are tolled by virtue of Defendant's knowing and active concealment of the facts alleged above. Plaintiff and class members were ignorant of the information essential to the pursuit of these claims, without any fault or lack of diligence on their own part.

52.    At the time the action was filed, Defendant was under a duty to disclose the true character, quality, and nature of its activities to Plaintiff and the class. Defendant is therefore estopped from relying on any statute of limitations.

53.    Defendant's fraudulent concealment is common to the class.

## CAUSES OF ACTION

### COUNT I
### Violations of the Video Privacy Protection Act,
### 18 U.S.C. § 2710

54.    Plaintiff incorporates by reference all of the above allegations.

55.    The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C § 2710(b)(1).

56.    A "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." *Id.* § 2710(a)(4).  Defendant is a "video tape service provider"

because it is engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

57.    As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiff and class members are subscribers to Defendant's service which provides video content. Thus, Plaintiff and class members are "consumers" under this definition.

58.    As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

59.    Pearson knowingly disclosed Plaintiff's and class members' Personal Viewing Information—specifically, their FIDs and the title and URL of the videos they requested or obtained—to Facebook.

60.    This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified Plaintiff and each class member to Facebook as an individual who requested or obtained Defendant's video content, including the specific video materials requested or obtained on Defendant's website. Indeed, anyone with an FID could identify the individual associated with it simply by entering "facebook.com/[FID]" into a web browser.

61.    Under the VPPA, "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner." *Id.* § 2710(b)(2)(B). Defendant failed to obtain informed, written consent under this definition.

62.    In addition, the VPPA creates an opt-out right for consumers. *Id.* § 2710(2)(B)(iii). It requires video tape service providers like Pearson to also "provide[] an opportunity for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." *Id.* Defendant failed to provide an opportunity to opt out as required by the VPPA.

63.    Defendant knowingly disclosed Plaintiff's and class members' Personal Viewing Information to Facebook.  Defendant programmed the Facebook Pixel into its website code, knowing that Facebook would receive specific video titles and the subscriber' FIDs when they requested or obtained videos.

64.    By disclosing Plaintiff's and the Class's Personal Viewing Information, Defendant violated Plaintiff's and the class members' statutorily protected right to privacy in their video-watching habits.

65.    As a result of the above violations, Defendant is liable to Plaintiff and other class members for actual damages in an amount to be determined at trial or, alternatively, for "liquidated damages" "not less than $2,500" per violation. *Id.* § 2710(c)(2). Under the statute, Defendant is also liable for reasonable attorneys' fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendant in the future. *Id.*

## PRAYER FOR RELIEF

66.    Plaintiff, individually and on behalf of all others similarly situated, hereby requests that the Court:

      a.    Certify this case as a class action;

      b.    Appoint Plaintiff as a Class representative and appoint Plaintiff's counsel to represent the Class;

c.      Find that Defendant's actions, as described herein, constitute violations of the VPPA;

d.      Award actual damages, or liquidated damages in an amount not less than $2,500 for each violation to Plaintiff and each class member;

e.      Award punitive damages in an amount to be determined at trial;

f.      Award reasonable attorneys' fees and reimbursement of litigation expenses;

g.      Award Plaintiff and class members pre- and post-judgment interest as provided by law;

h.      Enter judgment in favor of Plaintiff and the Class;

i.      Enjoin Defendant's ongoing misconduct, enter any equitable relief it deems appropriate, and awards restitution in an amount sufficient to disgorge Defendant's ill-gotten gains; and

j.      Enter any other relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

67.     Plaintiff demands a jury trial on all applicable claims.


Dated: March 15, 2023              Respectfully submitted,


                                   By: */s/ Douglas I. Cuthbertson*

                                   Douglas I. Cuthbertson
                                   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                   250 Hudson Street, 8th fl.
                                   New York, NY 10013
                                   Telephone: (212) 355-9500
                                   Facsimile: (212) 355-9592
                                   dcuthbertson@lchb.com

                                   Michael W. Sobol
                                   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                   275 Battery Street, 29th fl.
                                   New San Francisco, CA 94111
                                   Telephone: (212) 956-1000
                                   Facsimile: (212) 956-1008
                                   msobol@lchb.com

Matthew R. Wilson
Michael J. Boyle, Jr.
Jared W. Connors
MEYER WILSON CO., LPA
305 W. Nationwide Blvd.
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
mwilson@meyerwilson.com
mboyle@meyerwilson.com
jconnors@meyerwilson.com

Brian Levin
LEVIN LAW, P.A.
2665 South Bayshore Drive, PH2b
Miami, FL 33133
(305) 402-9050
(305) 676-4443
brian@levinlawpa.com

*Attorneys for Plaintiff and the Proposed Class*