UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN COLLINS, on behalf of himself and all others similarly situated, | Case No. 1:23-cv-2219-PAE |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S CLASS ACTION COMPLAINT** |
| v. | |
| PEARSON EDUCATION, INC., | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.      Plaintiff John Collins has Article III standing. ................................................. 3

        A.      Plaintiff adequately alleges Article III standing. ................................. 3

        B.      Pearson's contrary arguments fail........................................................ 6

                1.      Pearson invites the Court to impose an incorrect pleading standard in evaluating its motion........................................... 6

                2.      Plaintiff's "John Roe" allegations show how Pearson designed its website to violate the VPPA for all subscribers—including Plaintiff. ................................................. 8

                3.      Pearson fundamentally confuses standing with the merits. ...................... 9

        C.      Pearson's "fact-based" standing challenge is predicated on inadmissible lawyer argument dressed up as expert opinion. ................................... 11

II.     Plaintiff plausibly states a claim to relief........................................................ 16

        A.      Plaintiff's Facebook ID is PII under any standard.............................. 16

                1.      Plaintiff's Facebook ID is PII under the "ordinary person" test. ............ 17

                2.      Plaintiff's Facebook ID is PII under the "foreseeability" test. ............... 19

                3.      The vast majority of district courts have held that Facebook IDs are PII under the VPPA................................................. 21

                4.      Pearson's arguments to the contrary are meritless................................. 22

        B.      Pearson has more than adequate notice of the claim against it........................... 23

III.    There are no grounds to strike Plaintiff's class allegations at this stage. ........................ 24

CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ambrose v. Boston Globe Media Partners LLC*,
CV 21-10810-RGS, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) ................................. 7, 9, 22

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011) ........................................................................................ 11

*Austin-Spearman v. AMC Network Entm't LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) ........................................................................... 4, 6

*Belozerov v. Gannett Co., Inc.*,
CV 22-10838-NMG, 2022 WL 17832185 (D. Mass. Dec. 20, 2022) ....................... 7, 9, 20, 22

*Blagman v. Apple Inc.*,
No. 12 Civ. 5453(ALC)(JCF), 2013 WL 2181709 (S.D.N.Y. May 20, 2013) ........................ 25

*Brown v. DirecTV LLC*,
330 F.R.D. 260 (C.D. Cal. 2019) ................................................................................. 25

*Buechler v. Rumble, Inc.*,
22-CV-02237 (M.D. Fla. Mar. 13, 2023) ................................................................. 7, 8, 22

*California v. Texas*,
141 S. Ct. 2104 (2021) ............................................................................................. 9, 10

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) ................................................................................... 7, 11, 16

*Carter v. Scripps Networks, LLC*,
No. 22-CV-2031 (PKC), 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023) .................................. 4

*Chen–Oster v. Goldman, Sachs & Co.*,
877 F.Supp.2d 113 (S.D.N.Y. 2012) ............................................................................... 25

*City of Perry v. Procter & Gamble Co.*,
188 F. Supp. 3d 276 (S.D.N.Y. 2016) .............................................................................. 6

*Comm. on Judiciary of U.S. House of Reps. v. McGahn*,
968 F.3d 755 (D.C. Cir. 2020) ...................................................................................... 10

*Contra Riegel v. Medtronic, Inc.*,
451 F.3d 104 (2d Cir. 2006) ......................................................................................... 12

*Culverhouse v. Paulson & Co. Inc.*,
813 F.3d 991 (11th Cir. 2016) ...................................................................................... 10

*Czarnionka v. Epoch Times Ass'n, Inc. (Czarnionka I)*,
No. 22 Civ. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ............ 14, 17, 21, 22

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Czarnionka v. Epoch Times Ass'n.*, *Inc.* (*Czarnionka II)*,
   22 Civ. 6348 (AKH), 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022) ........................ 17, 18, 22

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ................................................................................................................ 12

*Davis v. FEC*,
   554 U.S. 724 (2008) .................................................................................................................. 4

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ......................................................................................... passim

*Ellis v. Cartoon Network, Inc.*,
   803 F.3d 1251 (11th Cir. 2015) ............................................................................................... 8

*FEC v. Ted Cruz for Senate*,
   142 S. Ct. 1638 (2022) ........................................................................................................... 10

*Feldman v. Star Tribune Media Co.*,
   No. 22-cv-1731, 2023 WL 2388381 (D. Minn. Mar. 7, 2023) ......................................... passim

*FTA Mkt. Inc. v. Vevi, Inc.*,
   No. 11 CV 4789 VB, 2012 WL 383945 (S.D.N.Y. Feb. 1, 2012) .......................................... 23

*Goldstein v. Fandango Media LLC*,
   22-CV-80569-KAM (S.D. Fla. Mar. 7, 2023) ........................................................... 7, 9, 18, 22

*Harris v. Pub. Broad. Serv.*,
   1:22-CV-2456-MLB, 2023 WL 2583118 (N.D. Ga. Mar. 20, 2023) ............................... 7, 9, 22

*Hayes v. Dep't of Educ. of City of New York*,
   20 F. Supp. 3d 438 (S.D.N.Y. 2014) ..................................................................................... 23

*In re Hulu Privacy Litig.*,
   No. 11-CV-03764, 2013 WL 6773794 (N.D. Cal. Dec. 20, 2013) .................................... passim

*In re Initial Pub. Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003) ................................................................................... 24

*In re Merrill Lynch & Co., Rsch. Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y.2003) ............................................................................................... 24

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016) ............................................................................... 4, 16, 17, 18

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) .............................................................................. 13, 14

*In re Vizio, Inc. Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................................................ 4, 9, 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Iqbal v. Twombly*,
    550 U.S. 544 (2007).............................................................................................. 23

*Kamen v. Am. Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986) ............................................................................. 12

*Kitchen Winners NY Inc. v. Rock Fintek LLC*,
    —F. Supp. 3d—, 2023 WL 2746031 (S.D.N.Y. Mar. 31, 2023)............................. 7

*Lebakken v. WebMD, LLC*,
    1:22-CV-644-TWT, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022).................... 7, 22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)............................................................................................. 9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..................................................................................... 5, 6, 7

*Martin v. Meredith Corp.*,
    No. 22cv4776 (DLC), 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) ..................... 4, 10, 22, 23

*Mazzola v. Roomster Corp.*,
    849 F. Supp. 2d 395 (S.D.N.Y. 2012) ................................................................ 25

*Mollet v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ............................................................................ 3

*Perry v. Cable News Network, Inc.*,
    854 F.3d 1336 (11th Cir. 2017) .................................................................. 4, 5, 8

*Ramirez v. Military Advantage, Inc.*,
    22-CV-10892-WGY (D. Mass. Jan. 30, 2023) ............................................. 7, 9, 22

*Robinson* v. *Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015) ............................................................... 21

*Senne v. Vill. of Palatine*,
    695 F.3d 597 (7th Cir. 2012) ............................................................................ 15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)........................................................................................ 3, 9

*Stark v. Patreon, Inc.*,
    No. 22-CV-03131, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022) ................ 7, 18, 22, 24

*Stark v. Redbox Automated Retail, LLC*,
    770 F.3d 618 (7th Cir. 2014) .............................................................................. 6

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)............................................................................................ 10

# TABLE OF AUTHORITIES
## (continued)

Page

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ................................................................................. 23

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ................................................................... 4, 9, 10

*Tyler v. Hennepin County*,
   No. 22-166, 2023 WL 3632754 (U.S. May 25, 2023) ....................... 5, 7

*Washington v. Kellwood Co.*,
   105 F. Supp. 3d 293 (S.D.N.Y. 2015) ................................................. 12

*Weichsel v. JP Morgan Chase Bank N.A.*,
   65 F.4th 105 (3d Cir. 2023) ................................................................. 10

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016) ........................................................ passim

**Statutes**

18 U.S.C. § 2710 ...................................................................................... 13, 16

18 U.S.C. § 2710(a) ........................................................................................ 3

18 U.S.C. § 2710(b) ........................................................................................ 3

18 U.S.C. § 2721 ........................................................................................... 15

**Rules**

Fed. R. Civ. P. 8 ............................................................................................ 23

Fed. R. Evid. 1101 ........................................................................................ 12

Fed. R. Evid. 702(a) ...................................................................................... 12

**Treatises**

3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions*, § 7:22 (6th ed. 2022) ..... 25

Restatement (Second) of Torts § 577 cmt. k (Am. Law Inst. 1977) ............................................. 15

**Other Authorities**

*Disclosure*, Black's Law Dictionary 583 (11th ed. 2019) ........................................................... 14

This is a straightforward claim based on a straightforward privacy statute. Defendant Pearson Education Inc. ("Pearson") is a large educational media company that offers streaming video services on its website to its subscribers. Pearson installed on its website a tracking product developed by Meta Platforms Inc. ("Meta"), formerly known as Facebook Inc., called "the Pixel." The Pixel is a small bit of computer code that collects and discloses to Meta personally identifiable information about the subscribers using Pearson's website and the actions they take on it. Among other things, the Pixel transmits the titles of the videos they request or obtain, together with the viewer's "Facebook ID" or "FID," a unique identifier anyone can use to look up the viewer's Facebook profile, which contains detailed information about the subscriber.

Plaintiff John Collins is a Pearson subscriber and a Facebook user. Whenever he watched a video on Pearson's website, Pearson transmitted to Meta via the Pixel the video's title and his Facebook ID, without his consent. In doing so, Pearson violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), which prohibits anyone in the business of selling, renting, or delivering videos from disclosing information capable of identifying its subscribers and the video materials they request or obtain without their informed, written consent. Nothing in Pearson's motion to dismiss changes these straightforward facts, or meaningfully contests the plausibility of Plaintiff's allegations, including that he suffered a concrete injury. Neither does the inadmissible lawyer argument Pearson attempts to submit in the guise of an expert declaration. Pearson's motion should therefore be denied in full.

## **BACKGROUND**

Pearson is a large education media publisher headquartered in New Jersey that operates a website at the address https://www.pearson.com. *See* Dkt. 1 (Compl.), ¶¶ 5, 16. On the "Pearson+" section of its website accessible at https://www.pearson.com/en-us/pearsonplus.html, Pearson

offers "a wide range of services," including "on-demand, pre-recorded educational videos." *Id.,* ¶ 16.

Pearson installed the Pixel on its website. *See id.*, ¶ 17. The Pixel is a "tracking tool" developed by Meta that "allow[s] online businesses like Pearson to track the actions of their customers on their respective websites . . . ." *Id.*, ¶ 18. As Meta explains, installing the Pixel allows companies like Pearson to "track Facebook ad-driven visitor activity on [their] website and enables Facebook to match . . . website visitors to their respective Facebook User accounts." *Id.*, ¶ 19 (internal quotation marks omitted).

When installing the Pixel, Pearson had a menu of options from which to select, including "to track specific user activity . . . for automatic disclosure to Meta, including . . . a user's name, email, phone number, and as relevant here, the FID, a unique and persistent identifier Facebook assigns to each Facebook user," which Pearson chose. *Id.*, ¶ 21. The FID is transmitted to Meta within a "c_user cookie." *Id.* Anyone who knows a user's Facebook ID can merely type "facebook.com/" into a web browser followed by the Facebook ID to see a person's Facebook profile page. *Id.*, ¶ 22. Pearson also transmits to Meta via the Pixel—in a single transmission alongside the Facebook ID—the titles and URL addresses of the videos subscribers request or obtain. *Id.*, ¶¶ 24–28. All of this is done without users' consent. *Id.*, ¶¶ 30–32.

Collins was a Pearson subscriber and a Facebook user, to whom Facebook assigned a unique Facebook ID linked to his Facebook account. *Id.*, ¶¶ 33–35. Collins registered for a Pearson account and watched videos on its website. *Id.* Whenever he did so, Pearson disclosed to Meta his Facebook ID and the title of the video he was watching via the Pixel, which Pearson had installed on its website solely to track users like Collins. *Id.*, ¶ 36.

These disclosures violated the VPPA, the federal statute designed to protect consumers' privacy in the video content they request and watch. The statute's "broad" language, *Mollet v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015), accomplishes this purpose by affording a private right of action to any "consumer" whose "personally identifiable information" (or "PII") is "knowingly disclose[d]" to any person by a "video tape service provider." 18 U.S.C. § 2710(a)–(b).

Collins filed this action on behalf of himself and similarly situated Pearson subscribers alleging a single count for violation of the VPPA. Dkt. 1. Pearson filed its motion to dismiss and accompanying memorandum on May 16, 2023. Dkts. 10, 11.

## ARGUMENT

## I.    Plaintiff John Collins has Article III standing.

Pearson moves to dismiss Plaintiff's claim for lack of standing because Plaintiff "does not allege any facts as to himself *at all*." Dkt. 11 (Pearson MTD), at 6. Pearson, however, ignores the factual allegations in the Complaint and tries to impose a higher pleading standard than that required by either the Federal Rules of Civil Procedure or applicable case law. From the outset, and as more fully explained below, most of Defendant's arguments are Rule 12(b)(6) attacks on the merits of Plaintiff's claims, not standing arguments. Putting aside that Pearson's proffered expert declaration contains obvious errors, it is inadmissible, irrelevant, and insufficient to put the Court's jurisdiction in issue.

### A.    Plaintiff adequately alleges Article III standing.

To establish Article III standing, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted). To determine whether an injury is sufficiently concrete, courts ask whether the asserted injury has

"a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). "Chief" among the intangible harms traditionally recognized as actionable in American courts is "disclosure of private information." *Id.* (citing *Davis v. FEC*, 554 U.S. 724, 733 (2008)).

The VPPA protects against this exact type of harm, which is why courts in this District and throughout the country have consistently held that VPPA claims like the one asserted here that involve disclosures via the Pixel satisfy the injury in fact requirement. *See, e.g.*, *Martin v. Meredith Corp.*, No. 22cv4776 (DLC), 2023 WL 2118074, at *2 (S.D.N.Y. Feb. 17, 2023) (holding that plaintiffs had Article III standing to assert VPPA claims, although ultimately dismissing on grounds not applicable here); *Carter v. Scripps Networks, LLC*, No. 22-CV-2031 (PKC), 2023 WL 3061858, at *3 (S.D.N.Y. Apr. 24, 2023) (same); *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (plaintiff alleging VPPA claim similar to those in instant case had standing); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017) (same); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (same); *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1215-17 (C.D. Cal. 2017). Indeed, that VPPA plaintiffs bringing otherwise adequately supported claims have "suffered a concrete injury" is a conclusion "supported by *every federal circuit court* that has considered the issue." *Feldman v. Star Tribune Media Co.*, No. 22-cv-1731, 2023 WL 2388381, at *5 (D. Minn. Mar. 7, 2023) (emphasis added).

Because privacy claims "do not always require additional consequences to be actionable," VPPA plaintiffs "need not allege any further harm to have standing." *Eichenberger*, 876 F.3d at 983–84. Therefore, "*every* disclosure of an individual's 'personally identifiable information' and

video-viewing history offends the interests that the [VPPA] protects." *Id.* at 983; *see also Perry*, 854 F.3d at 1340 (holding that plaintiffs "need not allege any *additional* harm beyond the one Congress has identified" in the VPPA (citation omitted)). Moreover, at the motion to dismiss stage, Plaintiff "need not definitively prove [his] injury or disprove [Pearson's] defenses. [He] has plausibly pleaded on the face of [his] complaint that [he] suffered . . . harm from the [defendant's] action, and that is enough for now." *Tyler v. Hennepin County*, No. 22-166, 2023 WL 3632754, at *3 (U.S. May 25, 2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Despite this legion of case law finding that plaintiffs alleging similar VPPA claims have standing to pursue their claims, Pearson argues that Plaintiff lacks standing because his allegations are too conclusory. *See* Pearson MTD, at 6. But Pearson ignores the allegations in the Complaint, which clearly and plausibly allege facts specific to Collins that establish an injury in fact under the VPPA. Specifically, Plaintiff alleges that he is a Pearson digital subscriber, having registered for an account and provided, among other things, his name and email address to Pearson. Compl., ¶ 33. Plaintiff requested or obtained videos from Pearson, and when he did, Pearson disclosed his Facebook ID coupled with the specific title of the video he requested or obtained and the URLs to access the videos. *Id.*, ¶¶ 34–35. Plaintiff also alleges how Pearson discloses Plaintiff's (and other website users') FID and Personal Viewing Information through its use of the Meta Pixel on its website. *Id.*, ¶¶ 17–29, 63. Plaintiff further alleges that Pearson disclosed his personally identifiable information in the form of his FID, along with the videos that he requested or obtained, to a third party (*i.e.*, Facebook). *See id.*, ¶¶ 33–38.

"[T]hat is enough for now." *Tyler*, 2023 WL 3632754, at *3. Plaintiffs' alleged injury—which arises from the disclosure itself—is a concrete "injury in fact" under the VPPA, and "*every court* to have addressed this question has reached the same conclusion, affirming that the VPPA

establishes a privacy right sufficient to confer standing through its deprivation." *Austin-Spearman*, 98 F. Supp. 3d at 666 (emphasis added); *In re Hulu Privacy Litig.*, No. 11-CV-03764, 2013 WL 6773794, at \*5 (N.D. Cal. Dec. 20, 2013) (holding that anyone who meets the definition of "aggrieved person" under the VPPA demonstrates injury-in-fact). By alleging that Pearson "disclosed their personal information in violation of the VPPA, [Plaintiffs] have met their burden of demonstrating that they suffered an injury in fact." *Stark v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014).

**B.    Pearson's contrary arguments fail.**

**1.    Pearson invites the Court to impose an incorrect pleading standard in evaluating its motion.**

Pearson argues that the foregoing alleged facts are insufficient because Plaintiff has not alleged detailed facts regarding the specific videos he requested, the details of when each video was requested, and the mechanism by which Pearson coupled and disclosed Plaintiff's FID with the titles of the videos Plaintiff requested or obtained. *See* Pearson MTD, at 6–8. But no such requirement is found in Rule 8—which is all the Complaint's standing allegations need satisfy to survive Pearson's facial Rule 12(b)(1) challenge. *See Lujan*, 504 U.S. at 561 (Standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . ."); *see also, e.g.*, *City of Perry v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 283–86 (S.D.N.Y. 2016) (discussing "Article III Standing and Rule 8"). As noted above, Plaintiff has alleged that he requested or obtained videos from the Pearson website, that Pearson disclosed his FID when he did so, and the method by which Pearson violates the VPPA through its use of the Meta Pixel throughout its website. Compl., ¶¶ 17–29, 34–35.  No more is required.

Pearson's argument attempts to impose a heightened pleading standard of its own invention to Plaintiff's claim. Here, general factual allegations of injury suffice, "for on a motion to dismiss

[courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 561). Plaintiff has "plausibly pleaded on the face of [his] complaint that [he] suffered . . . harm from [Pearson's] action, and that is enough for now." *Tyler*, 2023 WL 3632754, at *3. Pearson cites no authority for the proposition that Plaintiff must make additional, detailed allegations at this early stage in the case, and this argument should be rejected. *See, e.g.*, *Stark v. Patreon, Inc.*, No. 22-CV-03131, 2022 WL 7652166, at *8 (N.D. Cal. Oct. 13, 2022) (rejecting argument that VPPA plaintiffs must specifically allege that their Facebook profiles including their real names and noting that the defendant "cites no authority applying that granular a test, particularly at the pleading stage").[1] Indeed, by repeatedly echoing the formula "who, what, when, where, why," *see, e.g.*, Pearson MTD, at 8, para. 1, Pearson impliedly invokes the heightened— and here wholly inapplicable—pleading standard imposed by Rule 9(b) for pleading fraud or mistake. *See, e.g.*, *Kitchen Winners NY Inc. v. Rock Fintek LLC*, —F. Supp. 3d—, 2023 WL 2746031, at *16 (S.D.N.Y. Mar. 31, 2023). The Court should turn away Pearson's attempt to smuggle Rule 9 into a motion controlled entirely by Rule 8.

---

[1] As discussed further below under the rubric of Rule 12(b)(6), a litany of cases holds that similarly detailed allegations in VPPA cases survive motions to dismiss. *See, e.g.*, *Harris v. Pub. Broad. Serv.*, 1:22-CV-2456-MLB, 2023 WL 2583118 (N.D. Ga. Mar. 20, 2023); *Buechler v. Rumble, Inc.*, 22-CV-02237, ECF No. 54 (M.D. Fla. Mar. 13, 2023); *Feldman v. Star Tribune Media Co. LLC*, 22-CV-1731 (ECT/TNL), 2023 WL 2388381 (D. Minn. Mar. 7, 2023); *Goldstein v. Fandango Media LLC*, 22-CV-80569-KAM, ECF No. 57 (S.D. Fla. Mar. 7, 2023); *Ramirez v. Military Advantage, Inc.*, 22-CV-10892-WGY, ECF. No. 41 (D. Mass. Jan. 30, 2023); *Belozerov v. Gannett Co., Inc.*, CV 22-10838-NMG, 2022 WL 17832185 (D. Mass. Dec. 20, 2022); *Lebakken v. WebMD, LLC*, 1:22-CV-644-TWT, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022); *Ambrose v. Boston Globe Media Partners LLC*, CV 21-10810-RGS, 2022 WL 4329373 (D. Mass. Sept. 19, 2022).

2.      <u>Plaintiff's "John Roe" allegations show how Pearson designed its</u>
<u>website to violate the VPPA for all subscribers—including Plaintiff.</u>

In his Complaint, Plaintiff provides the example of a fictional person, John Roe, watching

the Pearson video "Introduction to Accounting – Types of Accounting" to show how Pearson

discloses Plaintiff's and class members' PII to Meta via its inclusion of the Pixel on its website in

violation of the VPPA. *Id.,* ¶¶ 24–29. Pearson takes issue with this illustration, arguing that John

Roe's experience cannot establish injury to Plaintiff. Pearson MTD, at 8–10. But Plaintiff included

the John Roe example only to demonstrate how the Pixel uniformly functions on Pearson's

website, not to establish Plaintiff's injuries or standing. As Pearson acknowledges, however, John

Roe is not a real person and is not a plaintiff in this case. Mot. at 9 (recognizing that "the Complaint

notes 'John Roe' is meant to be an example."). The cases Pearson cites for the proposition that a

plaintiff lacks standing where it has not purchased the product or service at issue are inapposite.[2]

Here, Plaintiff alleges that Pearson embedded the Meta Pixel on its website, Plaintiff subscribed

to Pearson's services, Plaintiff requested or obtained video materials from Pearson's website, and

was injured when Pearson disclosed his FID and Personal Viewing Information to Facebook (via

the Meta Pixel). *See* Compl., ¶¶ 24, 34-35, 59, 64. In short, Plaintiff has alleged an injury sufficient

to establish his own standing, and fictional person John Roe's standing is irrelevant.[3]

---

[2] To the extent Pearson is suggesting that only a paid subscription falls within the meaning of "subscriber" under the VPPA, such an argument is contrary to and not supported by any case law. To the contrary, multiple courts have held that payment is not necessary to qualify as a "subscriber" under the VPPA. *See, e.g.*, *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) ("We agree with the district court that payment is not a necessary element of subscription."); *see also Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 488 (1st Cir. 2016) ("[W]e therefore decline to interpret the statute as incorporating monetary payment as a necessary element."). Instead, whether Plaintiff is a "subscriber" turns on whether he has "demonstrated an ongoing commitment or relationship with" Pearson, which he has. *See Perry*, 854 F.3d at 1342; *see also In re Hulu Privacy Litig.*, No. 11-CV-03764, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012).
[3] Notably, a raft of successful VPPA complaints have included similarly illustrative examples. *See, e.g.*, *Buechler v. Rumble, Inc.*, 22-CV-02237, Dkt. 1, at ¶¶ 68–74 (M.D. Fla. Sept. 29,

### 3. <u>Pearson fundamentally confuses standing with the merits.</u>

Pearson's arguments, although couched in terms of Article III, are mostly substantive merits attacks on Plaintiff's claim or, at most, Plaintiff's *statutory* standing. *See, e.g.*, Pearson MTD, at 6–8. Article III standing addresses whether there is a "case or controversy" and requires that Plaintiff establish he has suffered an injury in fact. *Spokeo*, 578 U.S. at 342. As set forth above, Plaintiff easily met this burden by alleging, among other things, that he is a subscriber, and that Pearson disclosed his personally identifiable information and the videos that he requested or obtained to Facebook. *See* Compl., ¶¶ 3, 4, 33–36, 59. In other words, Plaintiff alleges that Defendant disclosed private facts about him—"[c]hief among" the "injuries with a close relationship to harms traditionally recognized" as actionable. *TransUnion*, 141 S. Ct. at 2204.

Article III standing "does not require a demonstration that the defendant's conduct is in fact unlawful. That is a merits issue." *California v. Texas*, 141 S. Ct. 2104, 2130 (2021) (rejecting an "absurd" attempt "to transform ordinary merits questions into threshold jurisdictional questions by jamming them into the standing inquiry"). Unlike Article III standing, "statutory standing is not a question of subject matter jurisdiction but rather an element of a plaintiff's cause of action." *In re Vizio*, 238 F. Supp. 3d at 1219 (discussing statutory standing under VPPA); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) (explaining that statutory standing depends on whether a particular plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue" and thus "has a cause of action under the statute").

---

2022); *Goldstein v. Fandango Media LLC*, 22-CV-80569-KAM, Dkt. 25, at ¶¶ 78–79, 84–85 (S.D. Fla. July 15, 2022); *Feldman v. Star Tribune Media Co. LLC*, 22-CV-1731 (ECT/TNL), Dkt. 1, at ¶¶ 24–28 (D. Minn. July 7, 2022); *Harris v. Pub. Broad. Serv.*, 1:22-CV-2456-MLB, Dkt. 1, at ¶¶ 39–40 (N.D. Ga. June 20, 2022); *Ramirez v. Military Advantage, Inc.*, 22-CV-10892-WGY, Dkt. 1, at ¶¶ 39–40 (D. Mass. June 8, 2022); *Belozerov v. Gannett Co., Inc.*, CV 22-10838-NMG, Dkt. 1, at ¶¶ 41–42 (D. Mass. June 1, 2022); *Ambrose v. Boston Globe Media Partners LLC*, CV 21-10810-RGS, Dkt. 22, at ¶¶ 28–36 (D. Mass. May 20, 2022).

Here, Pearson's "standing" arguments are directed to the merits of Plaintiff's claims or his statutory standing, not whether Plaintiff has suffered a concrete injury for purposes of Article III. Pearson argues that Plaintiff's factual allegations are inaccurate because Plaintiff's browser discloses the user's FID, not Pearson, and because the information Pearson discloses does not include the video title and URL. But standing "is not defeated by the possibility that the averments [in a complaint] might fail to state a cause of action on which [plaintiffs] could actually recover." *California*, 141 S. Ct. at 2130 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)). Thus, "whether the precise disclosure is actionable under the VPPA is a question *about the merits of [Plaintiffs'] claim*, rather than [their] ability to bring [their] case in federal court." *Meredith*, 2023 WL 2118074, at *2 (emphasis added) (denying portion of motion to dismiss for lack of standing). That ability is plainly granted to Plaintiff here.

Indeed, the analytically proper procedure for any Article III analysis begins by *assuming* the plaintiff's success on the merits. *See, e.g.*, *FEC v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1647-48 (2022) ("For standing purposes, we accept as valid the merits of appellees' legal claims, so we must assume that the loan-repayment limitation . . . unconstitutionally burdens speech."); *Weichsel v. JP Morgan Chase Bank N.A.*, 65 F.4th 105, 111 (3d Cir. 2023) ("[W]e . . . assume for the purposes of our standing inquiry that a plaintiff has stated valid legal claims." (citation omitted)); *Comm. on Judiciary of U.S. House of Reps. v. McGahn*, 968 F.3d 755, 762 (D.C. Cir. 2020) (en banc) (requiring the Court to "assume that the [plaintiff] will prevail on the merits" in the standing analysis) *Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 994 (11th Cir. 2016) ("In reviewing the standing question, the court must . . . assume that on the merits the plaintiffs would be successful in their claims." (citation omitted)); *see also TransUnion*, 141 S. Ct. at 2208 ("[a]ssuming that the plaintiffs are correct that TransUnion violated its obligations" under federal

law before engaging in standing analysis). In other words, the burden Rule 12(b)(1) placed on Pearson here was to *assume*, not *controvert*, that Plaintiff's allegations make out a meritorious VPPA claim—that Pearson did indeed knowingly disclose to Meta Plaintiff's personally identifiable information via the Pixel—and *then* to show the Court why, nevertheless, a judgment in Plaintiff's favor would fall outside the ambit of Article III. As shown above, Pearson has not and cannot come close to carrying that burden.

### C.      Pearson's "fact-based" standing challenge is predicated on inadmissible lawyer argument dressed up as expert opinion.

The reason that Pearson frames its direct substantive attack as a jurisdictional challenge is no mystery—Pearson's Rule 12(b)(1) Article III standing argument is an attempt to have this Court consider extraneous evidence, namely, the declaration of David J. Youssef (Dkt. 12). On a fact-based Rule 12(b)(1) motion, however, a "district court [can] consider[] evidence outside the pleadings" only if such evidence places "jurisdictional facts in dispute." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). Because Pearson's extrinsic evidence attacks Plaintiff's statutory standing and the merits of Plaintiff's claim, the Court should disregard that evidence. *Carter*, 822 F.3d at 59. And because Pearson's arguments are directed to whether Plaintiff stated a cause of action under the VPPA, they must be considered under the Rule 12(b)(6) standard. *In re Vizio*, 238 F. Supp. 3d at 1219 ("[S]tatutory standing is properly scrutinized under Rule 12(b)(6)."). Pearson's arguments are not properly brought under Rule 12(b)(1) because they are not directed at Article III standing. The Court should therefore disregard Defendant's proffered declaration without more.

In any event, Defendant's "evidence" is in fact wholly inadmissible lawyer argument which it improperly submits as purported outside expertise. As a threshold matter, Pearson's proffered submission must satisfy the Federal Rules of Evidence before meriting the Court's consideration.

*See* Fed. R. Evid. 1101(a)–(b), (d) (The Rules apply to civil proceedings before the district courts with here inapplicable exceptions.); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[C]ourts have required that evidence submitted outside the pleadings [on a Rule 12(b)(1) motion be 'competent.'"). No competent evidence appears here.

Specifically, the Youssef Declaration submitted as Exhibit A to Pearson's motion (Dkt. 12)—in purporting to rely on Youssef's "specialized knowledge," Fed. R. Evid. 702(a), to evaluate Plaintiff's claims—is subject to the requirements of Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* Youssef Decl., ¶¶ 3, 5–6 (explaining that Pearson retained his firm, where he provides "cybersecurity expertise across a broad range of matters," "to evaluate the allegations made in the Complaint"). To satisfy these requirements, Pearson must show by a preponderance of the evidence that Youssef's opinions are helpful, reliable, and within his qualifications to give. *See, e.g.*, *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 303–08 (S.D.N.Y. 2015) (laying out general Rule 702 standards in fulsome detail).

Pearson has done none of these things. There is no indication anywhere, neither in its brief nor the Youssef declaration itself, that Youssef's analysis is the product of reliable principles reliably applied. Against Second Circuit authority, there is no "explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion"—there is only assertion. *Contra Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006). Moreover, while Youssef does recite his experience "as a cybersecurity professional," Youssef Decl., ¶ 1, he does not establish how that experience relates to this case. *Contra Washington*, 105 F. Supp. 3d at 304–05 (requiring relationship between witness's qualifications and subject matter of proffered testimony). This is not a case about "breach response, crisis management, advanced cybersecurity assessments, source code review, cyber-regulatory compliance, [or] advanced threat detection and

prevention," Youssef Decl., ¶ 3—it is a case about *privacy*, and whether and how Pearson's deployment of the Pixel on its website discloses users' private information. Neither Youssef nor Pearson offers any grounds to believe that Youssef is qualified to opine on such matters.[4]

Most egregiously, Youssef's declaration simultaneously assaults the Court's exclusive power to say what the law is *and* the Court's exclusive province as the finder of fact on Pearson's "fact-based" Rule 12(b)(1) motion. It is therefore unhelpful and irrelevant to the Court's determination. Youssef blithely asserts that Plaintiff is "incorrect" to allege that "Pearson's use of the Meta Pixel on its website resulted in disclosure of 'personally identifiable information' that identifies a person as having requested or obtained specific video materials to Facebook." Youssef Decl., ¶ 6. In parroting the language of the VPPA, *see* 18 U.S.C. § 2710(a)(3), (b)(1) (prohibiting "disclos[ure]" of "information which identifies a person as having requested or obtained specific video materials"), Youssef unabashedly, and impermissibly, purports to instruct the Court "what result to reach" on the ultimate legal issue presented by Plaintiff's claim. *Contra In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004).

In reaching that conclusion, Youssef asserts that Pearson's conduct does not amount to an actionable "disclosure" of Plaintiff's "personally identifiable information" as defined under the VPPA for two chief reasons: Plaintiff's browser, not Pearson, disclosed Plaintiff's Facebook ID to Meta, *see* Youssef Decl., ¶ 13; and the information disclosed to Meta via the Pixel "must be decoded" (that is, interpreted) "before a recipient can identify the individual components." *Id.*,

---

[4] Indeed, Youssef's basic factual errors highlight the risks of accepting his declaration in the absence of the full Rule 702 showing demanded of Pearson. For example, Youssef asserts that "the 'fbp' parameter ... is the Meta Pixel code version used." Youssef Decl., ¶ 18. That is incorrect: in fact, it is Plaintiff's understanding that the parameter contains a unique identifier Meta creates for a user when she visits Pearson's site for the first time. It includes a timestamp followed by a random number sequence. The identifier is saved as a cookie and transmitted whenever the user visits the site in the future.

¶ 17. Both of these points are no more than the argument of counsel: specifically, that Pearson's role in installing the Pixel on its own website is an insufficient causal contribution to the disclosure of Plaintiff's PII to support VPPA liability; and that the data disclosed to Meta is too illegible to count as "identifiable" under the VPPA. But an expert is not "permitted to supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence." *In re Rezulin*, 309 F. Supp. 2d at 541 (citation omitted). Youseff is also wrong.

First, Pearson argues via Youssef that its decision to install the Pixel and thereby afford Meta unrestricted access to Pearson subscribers' PII cannot constitute a "disclosure" under the VPPA. *See* Youssef Decl., ¶ 13. That is incorrect. "By installing the Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within," which is "sufficient to constitute 'disclosure' under the VPPA." *Czarnionka v. Epoch Times Ass'n, Inc. (Czarnionka I)*, No. 22 Civ. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (citing *Hulu*, 2014 WL 1724344, at *14 (ruling as a matter of law on Rule 12(b)(6) motion that the complaint adequately alleged that "the Pixel was installed by Defendant on Defendant's website," so it was "therefore inaccurate for Defendant to claim that the transmission of information occurs 'independent of any action by [Defendant]'")), *motion to certify appeal denied*, No. 22 CIV. 6348 (AKH), 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022).[5]

As courts have explained under the VPPA and in other contexts, any act that gives others access to what was previously inaccessible may constitute a disclosure. *See Disclosure*, Black's Law Dictionary 583 (11th ed. 2019) (defining disclosure as "[t]he act or process of making known something that was previously unknown; a revelation of facts"). For example, applying the VPPA,

---

[5] In any event, the cases cited *supra* at n.1, and again below all hold that materially indistinguishable allegations against publishers who install the Pixel on their websites survive motions to dismiss.

the *Hulu* court observed, "[t]hrowing Judge Bork's video watch list in the recycle bin is not a disclosure. Throwing it in the bin knowing that the Washington Post searches your bin every evening for intelligence about local luminaries might be." *Hulu*, 2014 WL 1724344, at *14. Applying the Federal Driver's Privacy Protection Act—which, like the VPPA, prohibits "knowing[] disclos[ure]" of certain "personal information," 18 U.S.C. § 2721(a)—the Seventh Circuit held that "placing the information on the windshield of [a] vehicle in plain view on a public way" was "certainly sufficient" to constitute a disclosure under the statute. *Senne v. Vill. of Palatine*, 695 F.3d 597, 603 (7th Cir. 2012). And under the common law of defamation, any act that merely "creates an unreasonable risk" of communication "amounts to a publication just as effectively as an intentional communication." Restatement (Second) of Torts § 577 cmt. k (Am. Law Inst. 1977).

Though drawn from different areas of the law, these examples recognize that any act exposing to others' view what was previously hidden may constitute an actionable disclosure; direct, unmediated, point-to-point or person-to-person transmission is not required. And by installing the Pixel on its website, Pearson, at minimum, exposed its subscribers' PII to Meta's reach. The ordinary meaning of the statutory term "disclose" requires no more. Put differently, Pearson's argument is akin to placing a listening device in someone's house and then arguing that the manufacturer of the listening device is the only party who is liable.

Second, Pearson argues through Youssef that the PII disclosed by Pearson to Meta via the Pixel is sufficiently legible to be "identifiable" under the VPPA. *See* Youssef Decl., ¶ 17. As a matter of law under any circuit's view of the question, and as explained below, Pearson is wrong again. So too as a matter of fact. Pearson's own declaration acknowledges that the video title of videos watched on the Pearson website are transmitted to Facebook but argues that this disclosure

is not a violation of the VPPA because it is not the "video file name" or "thumbnail name" contained in the website's source code. Youseff Decl., ¶ 20. The VPPA prohibits the disclosure of information "which identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). Transmitting the name of the video watched falls within the VPPA's prohibition, regardless of whether the video title also matches the technical "video file name" in the source code. *Cf. Hulu*, 2014 WL 1724344, at *14 (holding that disclosure violated VPPA despite that it included an encoded user ID, rather than an actual name, because "[c]ode is a language, and languages contain names").

In sum, Youssef's opinions are inadmissible under well-established Rule 702 law, are wrong under existing precedent, and are "immaterial because [they do] not contradict plausible allegations that are themselves sufficient to show standing." *Carter*, 822 F.3d at 57. Pearson's allegedly "fact-based" challenge to Plaintiff's standing is no such thing. The Court should disregard the Youssef Declaration and deny Pearson's motion on the pleadings.

## II.    <u>Plaintiff plausibly states a claim to relief.</u>

### A.    <u>Plaintiff's Facebook ID is PII under any standard.</u>

The VPPA provides that "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Courts slightly differ on the standard they apply for what encompasses information that is "personally identifiable" or "capable of identifying a person" under the VPPA. The Third and Ninth Circuits apply an ordinary person test, holding that information is personally identifiable if it "readily permit[s] an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger*, 876 F.3d at 985 (quoting *In re Nickelodeon*, 827 F.3d at 267). The First Circuit applies a broader foreseeability test, holding that information is personally identifiable if it is "reasonably and foreseeably likely

to reveal" which videos a person has requested or obtained. *Yershov v. Gannett Satellite Info. Network Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). The Second Circuit has yet to weigh in, but as a court in this District has twice made clear, Facebook IDs constitute PII under either standard. *See Czarnionka I*, 2022 WL 17069810, at *2–3; *Czarnionka v. Epoch Times Ass'n.*, *Inc.* (*Czarnionka II)*, 22 Civ. 6348 (AKH), 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022).

Pearson argues that Plaintiff's Facebook ID is not PII because it is a string of code located within other lines of code. Pearson MTD, at 19–21. But as its own authorities explain, "[c]ode is a language, and languages contain names." *Hulu*, 2014 WL 1724344, at *14. "[A] string of numbers and letters does not alter the conclusion" that a "Facebook User ID … personally identifies a Facebook user." *Id.*

### 1.    Plaintiff's Facebook ID is PII under the "ordinary person" test.

The "ordinary person" test was established by the Third Circuit in *Nickelodeon* (whose reasoning and rule the Ninth Circuit adopted in *Eichenberger*, 876 F.3d at 985). According to the *Nickelodeon* court, there is a "spectrum" of personally identifiable information. 827 F.3d at 282. Collins's Facebook ID easily falls on the "identifiable" side of that spectrum. "At one end" of the spectrum is "a person's actual name." *Id.* Next is information "such as a telephone number or a physical address" which does not in itself identify a specific person but could be used to do so "by consulting publicly available sources." *Id.* at 282–83. "Further down the spectrum" is information such as a social security number which requires "consulting another entity" to match to a specific person. *Id.* at 283. Finally, "even further down the spectrum" was the kind of information then before the *Nickelodeon* court: IP addresses, "browser fingerprints," and "unique device identifiers," *id.* at 281–82, all of which "would likely be of little help" to an "average person" trying to identify someone specific. *Id.* at 283. Likewise, in *Eichenberger*, the Ninth Circuit held that an ordinary person would not be able to use streaming device serial numbers to identify anyone

specific where the serial numbers could be linked to specific persons only by stitching together "an enormous amount of information" collected by defendant "from a variety of sources" using defendant's "complex" proprietary methods of analysis. 876 F.3d at 986.

Unlike the device and other anonymized identifiers at issue in *Nickelodeon* and *Eichenberger*, Collins's Facebook ID readily permits an ordinary person to identify him. As the complaint explains, *anyone*, even someone with extremely limited technical proficiency, can enter "facebook.com/" into a web browser followed by Collins's Facebook ID and be taken directly to his personal Facebook page. Compl., ¶ 22; *see id.*, ¶¶ 27–28 (illustrating simple, one-step process for identifying a person using his Facebook ID), ¶ 33–34 (alleging Collins was a Facebook user with a Facebook ID while he was an Pearson subscriber). This is no different than looking up a telephone number or an address in a phone book, two pieces of information located by *Nickelodeon* just next to "a person's actual name" on the spectrum of PII, the former of which is expressly given as an example of PII by the statute. 827 F.3d at 282. Like looking up a telephone number or address in a phone book, linking Collins's Facebook ID to his identity is well within the reach of an ordinary person, unaided by any advanced, proprietary, or other extraordinary means. Collins's Facebook ID thus satisfies the ordinary person test—a result expressly contemplated by *Eichenberger*, 876 F.3d at 986 ("A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual."), and supported by district courts that have recently applied the ordinary person test in analogous VPPA litigation involving the Pixel. *See Czarnionka II*, 2022 WL 17718689, at *1; *Feldman v. Star Tribune Media Co. LLC*, 22-CV-1731 (ECT/TNL), 2023 WL 2388381 (D. Minn. Mar. 7, 2023); *Goldstein v. Fandango Media LLC*, 22-CV-80569-KAM, ECF No. 57 (S.D. Fla. Mar. 7, 2023); *Stark v. Patreon, Inc.*, 22-CV-03131-JCS, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022).

Pearson speculates that "an ordinary person would not know how to use [the c_user cookie containing a Facebook ID] to identify a person." MTD at 17. This unsupported *ipse dixit* is not grounds for dismissal. At most, the capabilities of an ordinary person with respect to a Facebook ID or c_user cookie is a question for the trier of fact. *Cf. Hulu*, 2014 WL 1724344, at *14 (denying summary judgment) ("There is a material issue of fact that the information transmitted to Facebook was sufficient to identify individual consumers."). Furthermore, if an ordinary person had any doubt what the label "c_user" referred to, she would have only to input that term into any search engine to see that "c_user" refers to a unique Facebook identifier. For example, every result on the first page returned by a Google search for "c_user" refers to its function as a unique identifier for Facebook users. Today, there is little reason to expect an ordinary person, much less Meta, would be any more perplexed by a string of numbers labeled "c_user" comprising a Facebook ID than by a string of numbers presented in the form "(xxx) xxx-xxxx." *Cf. Eichenberger*, 876 F.3d at 986 ("[M]odern technology may indeed alter—or may already have altered—what qualifies under the statute. A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual.").

### 2.    **Plaintiff's Facebook ID is PII under the "foreseeability" test.**

Collins's Facebook ID satisfies the First Circuit's less restrictive foreseeability test just as readily. As the First Circuit explained:

> Many types of information other than a name can easily identify a person. Revealing a person's social security number to the government, for example, plainly identifies the person. Similarly, when a football referee announces a violation by "No. 12 on the offense," everyone with a game program knows the name of the player who was flagged.

*Yershov*, 820 F.3d at 486.

In *Yershov*, the court held that defendant disclosed PII when it disclosed to a third party the GPS coordinates of its users' devices, together with special device identifiers unique per device and per user, whenever its users watched a video. *See id.* at 484 (describing information at issue), 486 (holding information was PII). According to the complaint's allegations, the third-party recipient "ha[d] the 'game program,' so to speak," that allowed it to link the coordinates and identifiers to specific persons. 820 F.3d at 486. At any rate, the court suggested, "[g]iven how easy it is to locate a GPS coordinate on a street map," GPS coordinates without more can constitute PII under the right circumstances. *Id.* ("[I]magine [defendant] had disclosed that a person viewed 146 videos on a single device at 2 sets of specified GPS coordinates. . . . [T]his disclosure would enable most people to identify what are likely the home and work addresses of the viewer (*e.g.,* Judge Bork's home and the federal courthouse)."). Allowing that some connections between information and identity may be "too uncertain, or too dependent on too much yet-to-be-done, or unforeseeable detective work" for the information to qualify as "identifiable," the connection alleged in *Yershov* was "both firm and readily foreseeable" to defendant. *Id.* The information was therefore PII. *Id.*

Those district courts that have relied on the *Yershov* test in substantially similar VPPA lawsuits found that Facebook IDs can constitute PII. *See Feldman*, 2023 WL 2388381, at *9 ("[C]onnecting a Facebook ID to a specific person, a URL to a particular video, and the specific person to the particular video is a reasonably straightforward exercise."); *Belozerov*, 2022 WL 17832185, at *4 ("A Facebook ID meets the broad definition of PII in this circuit."). The same should hold true here. The connection between Collins's Facebook ID and Collins's identity was "both firm and readily foreseeable" to Pearson when it disclosed the former to Meta. *Yershov*, 820 F.3d at 486. Pearson ought to have known (it would be utterly implausible for it not to have known) that, of all possible third-party recipients of Collins's Facebook ID, Facebook's developer Meta

would be the most likely to "have the game program" that could correlate Collins's Facebook ID to his identity—no contingencies or "unforeseeable detective work" required. Disclosing a Facebook ID to Facebook's developer is thus indistinguishable from disclosing a social security number to the federal government, a disclosure that "plainly identifies the person." *Id.*

### 3. The vast majority of district courts have held that Facebook IDs are PII under the VPPA.

In light of the ease with which Facebook IDs are associated with specific Facebook users, the vast majority of district courts in substantially similar Pixel lawsuits have concluded that Facebook IDs are PII under the VPPA. As the Northern District of California explained succinctly,

> [A] Facebook user—even one using a nickname—generally is an identified person on a social network platform. The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user. That it is a string of numbers and letters does not alter the conclusion. Code is a language, and languages contain names, and the string is the Facebook user name.

*Hulu*, 2014 WL 1724344, at *14.

Citing *Hulu*, the Southern District of New York in *Robinson* agreed that Facebook IDs are a paradigm case of PII: a Facebook ID is "equivalent to a name—it stands in for a specific person." *Robinson* v. *Disney Online*, 152 F. Supp. 3d 176, 184 (S.D.N.Y. 2015). This District reiterated that holding recently when it denied a motion to dismiss in a VPPA lawsuit on substantially similar facts, where the complaint alleged defendant disclosed plaintiff's PII, including his Facebook ID, to Meta by means of the Pixel. *Czarnionka I*, 2022 WL 17069810, at *3. The Court emphasized that "Facebook need not link the disclosed FID to personal information obtained elsewhere […] [t]he FID *itself* represents a particular individual." *Id.* (emphasis added). When the *Czarnionka I* defendant sought an interlocutory appeal on the question of whether and how the Second Circuit would apply the ordinary person test, the Court denied certification, explaining that "[e]ven if this Court were to explicitly adopt the 'ordinary person' standard," the standard was met, since a

"Facebook ID […] is sufficient for an ordinary person to identify Plaintiff and similarly situated individuals by simply typing 'facebook.com/[Facebook ID]' into a web browser." *Czarnionka II*, 2022 WL 17718689, at *1.

To date, at least ten district courts across the nation have upheld substantially similar VPPA claims related to the Pixel. *See id.*; *Harris v. Pub. Broad. Serv.*, 1:22-CV-2456-MLB, 2023 WL 2583118 (N.D. Ga. Mar. 20, 2023); *Buechler v. Rumble, Inc.*, 22-CV-02237, ECF No. 54 (M.D. Fla. Mar. 13, 2023); *Feldman v. Star Tribune Media Co. LLC*, 22-CV-1731 (ECT/TNL), 2023 WL 2388381 (D. Minn. Mar. 7, 2023); *Goldstein v. Fandango Media LLC*, 22-CV-80569-KAM, ECF No. 57 (S.D. Fla. Mar. 7, 2023); *Stark v. Patreon, Inc.*, 22-CV-03131-JCS, 2023 WL 2090979 (N.D. Cal. Feb. 17, 2023); *Ramirez v. Military Advantage, Inc.*, 22-CV-10892-WGY, ECF. No. 41 (D. Mass. Jan. 30, 2023); *Belozerov v. Gannett Co., Inc.*, CV 22-10838-NMG, 2022 WL 17832185 (D. Mass. Dec. 20, 2022); *Lebakken v. WebMD, LLC*, 1:22-CV-644-TWT, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022); *Ambrose v. Boston Globe Media Partners LLC*, CV 21-10810-RGS, 2022 WL 4329373 (D. Mass. Sept. 19, 2022). Pearson wholly disregards this compelling body of law, including the District's recent *Czarnionka I* and *II* decisions, while offering no authority for the proposition that Facebook IDs are not PII under the VPPA. The case law to date is thus overwhelmingly in Collins's favor.

### 4.    Pearson's arguments to the contrary are meritless.

Pearson's reliance on *Martin v. Meredith Corporation* is misplaced and misleading. *See* 2023 WL 2118074, at *3. Not only is *Meredith* an outlier among the numerous district courts that have upheld substantially similar Pixel claims under the VPPA, it is also factually distinguishable. The webpages at issue in *Meredith* purportedly contained both video and non-video content such that it was unclear whether the website visitor even requested or obtained the video on the webpage. *Id.* Moreover, the URLs transmitted through the Pixel purportedly did not necessarily

reflect the video's title. *See id.* (noting webpage entitled "Ryan Reynolds Hilariously Trolls Wife Blake Lively on Her Birthday" contained a differently titled video, "Ryan Reynolds on How Blake Lively Has Made Him 'The Father of My Dreams.'"). The *Meredith* court was thus concerned that a person may have "merely reviewed an article on the page" and not a video. *Id.* at *4. Here, by contrast, Plaintiff has alleged that the Pearson URLs at issue are to videos—and videos alone—that users clicked on and requested, where the URLs transmitted through the Pixel reflected specific video titles. Compl., ¶ 26. *Meredith* has no application here.

**B.      Pearson has more than adequate notice of the claim against it.**

Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[S]uch a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Hayes v. Dep't of Educ. of City of New York*, 20 F. Supp. 3d 438, 441 (S.D.N.Y. 2014) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). "The complaint must contain 'only enough facts to state a claim to relief that is plausible on its face.'" *FTA Mkt. Inc. v. Vevi, Inc.*, No. 11 CV 4789 VB, 2012 WL 383945, at *2 (S.D.N.Y. Feb. 1, 2012) (quoting *Iqbal v. Twombly*, 550 U.S. 544, 569 (2007)). "This simplified notice pleading standard is provided by Federal Rule of Civil Procedure 8(a)(2) and 'relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'" *Id.* (quoting *Swierkiewicz*, 534 U.S. at 512).

Plaintiff has met this standard, having succinctly and clearly alleged facts stating a claim for violation of the VPPA: Plaintiff is a digital subscriber of Pearson, having registered for an account and providing, among other things, his name and email address to Pearson; Plaintiff requested or obtained videos through the Pearson website; when Plaintiff requested or obtained those videos, Pearson disclosed Plaintiff's FID to Facebook coupled with the specific title of the

videos; and Pearson did so by intentionally installing the Meta Pixel on its website, which transmits information—including FIDs and video watching information—about Pearson's users to Facebook when they use the Pearson website. (Compl. ¶¶ 3, 17-29, 33-36.) These are the same allegations that Pearson argues Plaintiff must allege to state a claim for violation of the VPPA. Pearson MTD, at 13.

Pearson goes beyond Rule 8's requirements, however, and contends that Plaintiff has not stated a claim for violation of the VPPA because he has not alleged the "what, when, where, how" of his VPPA claim. *See* MTD at 13–15. In doing so, as explained above, Pearson asks the Court to impose a heightened pleading standard to Plaintiff's Complaint akin to the standard required by Rule 9 of the Federal Rules of Civil Procedure for fraud claims. *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003) (Rule 9(b)'s particularity requirements "means the who, what, when, where, and how: the *first paragraph* of any newspaper story" (citation omitted)). Pearson's position is not supported by case law or the text of VPPA and should be rejected by the Court. Plaintiff has made a short and plain statement of his claim, and no further detail is required. *See Stark*, 2022 WL 7652166, at *8 (rejecting argument that VPPA plaintiffs must make certain specific factual allegations to state a claim).

### III.  There are no grounds to strike Plaintiff's class allegations at this stage.

Pearson also asks the Court to strike Plaintiff's class allegations, claiming that some Class Members may or may not have signed arbitration agreements which may or may not be binding. While "motions to strike are viewed with disfavor and infrequently granted," *In re Merrill Lynch & Co., Rsch. Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y.2003), Pearson's motion is "*even more* disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions

relevant to class certification." *Blagman v. Apple Inc.*, No. 12 Civ. 5453(ALC)(JCF), 2013 WL 2181709, at *2 (S.D.N.Y. May 20, 2013) (alteration and citation omitted; emphasis added). District courts frequently have deferred the Rule 23 determination until the class certification stage, after the development of a "more complete factual record." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012); *see also* 3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions*, § 7:22 (6th ed. 2022) ("When a defendant moves to defeat class certification prior to the end of discovery, many courts simply deny the motion outright on the grounds that the plaintiff is entitled to discovery on class certification issues."). However, "a motion to strike that addresses issues separate and apart from the issues that will be decided on a class certification motion is not procedurally premature." *Chen–Oster v. Goldman, Sachs & Co.*, 877 F.Supp.2d 113, 117 (S.D.N.Y. 2012) (citation omitted).

No such issues are presented here. The possible existence of binding arbitration agreements for one or more class members is just the kind of issue that can be addressed at certification. *See, e.g.*, *Brown v. DirecTV LLC*, 330 F.R.D. 260, 271–72 (C.D. Cal. 2019). And even then, the existence of arbitration agreements may be "a common issue as to all putative Class members" and therefore no obstacle to certification. *See, e.g.*, *id.* at 272. The Court should not allow Defendant to accomplish by the inapt tool of Rule 12(f) what it could not accomplish by the appropriate procedural vehicle under Rule 23.

## <u>CONCLUSION</u>

For the reasons above, Pearson's motion to dismiss under Rules 12(b)(1) and 12(b)(6) and to strike under Rule 12(f) should be denied in full.

Dated: June 13, 2023                    Respectfully submitted,

*/s/ Douglas I. Cuthbertson*
Douglas I. Cuthbertson
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013
Telephone: (212) 355-9500
dcuthbertson@lchb.com

Michael W. Sobol (*pro hac vice*)
Ian R. Bensberg (*pro hac vice* forthcoming)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 728-4417
msobol@lchb.com
ibensberg@lchb.com

Matthew R. Wilson (*pro hac vice*)
Michael J. Boyle, Jr. (*pro hac vice*)
Jared W. Connors (*pro hac vice*)
MEYER WILSON CO., LPA
305 W. Nationwide Blvd.
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
mwilson@meyerwilson.com
mboyle@meyerwilson.com
jconnors@meyerwilson.com

Brian Levin (*pro hac vice*)
LEVIN LAW, P.A.
2665 South Bayshore Drive, PH2b
Miami, FL 33133
(305) 402-9050
(305) 676-4443
brian@levinlawpa.com

*Attorneys for Plaintiff and the Proposed Class*