UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN COLLINS, *on behalf of himself and all others similarly situated*,

Plaintiff,

-v-

PEARSON EDUCATION, INC.,

Defendant.

23 Civ. 2219 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff John Collins brings this putative class action against Pearson Education, Inc. ("Pearson") alleging violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Collins alleges that Pearson knowingly discloses to Meta Platforms, Inc. ("Facebook")—the parent company of the popular social media service Facebook—data containing Collins' and other subscribers' personally identifiable information ("PII") without their consent.

Pearson has moved to dismiss Collins' Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), for failure to give fair notice under Federal Rule of Civil Procedure 8(a), and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In the alternative, Pearson moves to strike Collins' class allegations under Federal Rule of Civil Procedure 12(f). For the following reasons, the Court denies Pearson's motions to dismiss and to strike.

## I.        Factual Background[1]

Pearson is an education media company that publishes and sells a wide variety of print and digital products.  Dkt. 1 ("Compl.") ¶ 16.  One of its digital products is Pearson+, available on Pearson's website Pearson.com.  *Id.*  Pearson+ offers a wide range of services, including electronic textbooks and on-demand, pre-recorded educational videos.  *Id.*  Separate from its Pearson+ videos, Pearson also provides other pre-recorded video content on its website.  *Id.*

Pearson installed on its website a tracking product, called the Meta Pixel (the "Pixel"), developed by Facebook.  *Id.* ¶ 18.  The Pixel tracks users' actions on websites and reports them to Facebook.  *Id.* ¶ 24.  Facebook introduced the Pixel in 2013 to allow online businesses like Pearson to track its users' online activity on their respective websites and to build detailed profiles about them.  *Id.* ¶ 18.  Facebook advertises to companies, like Pearson, that installing the Pixel allows them to "track Facebook ad-driven visitor activity on [their] website" and enables Facebook "to match . . . website visitors to their respective Facebook User accounts."  *Id.* ¶ 19 (quoting *Meta Pixel*, META FOR DEVELOPERS, https://developers.facebook.com/docs/meta-pixel/get-started).

Once embedded and activated, the Pixel "tracks the people and type of actions they take," including the webpages users visit, the buttons they click, as well as the specific information they input into a website.  *Id.* ¶ 18 (quoting *Retargeting: How to Advertise to Existing Customers with Ads on Facebook*, META FOR BUSINESS, https://www.facebook.com/business/goals/retargeting).  During the Pixel installation process, Pearson had a menu of available user activities or "events"

---

[1] The Court draws the facts in this decision principally from the Complaint.  For purposes of the motion to dismiss under Rule 12(b)(1), the Court may refer to evidence outside the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The Court, for this purpose, has considered the declaration of David Youssef, Dkt. 12 ("Youssef Decl."), submitted by Pearson.

it could select to track and automatically disclose to Facebook. *Id.* ¶ 21. This includes a user's name, email, phone number, and Facebook ID ("FID"). *Id.* A user's Facebook ID is a unique and persistent identifier Facebook assigns to each Facebook user. *Id.* Anyone who knows a user's Facebook ID can type "facebook.com/" followed by the Facebook ID into a web browser to view that user's Facebook profile page. *Id.* ¶ 22. The Pixel transmits a user's unencrypted Facebook ID to Facebook using a "c_user" cookie.[2] *Id.* ¶ 21. Pearson chose to track and transmit to Facebook via the Pixel a user's Facebook ID, whether a user requested a video on Pearson's website, and the video title and URL. *Id.* ¶¶ 22, 24–28. The Pixel discloses a user's Facebook ID, which is displayed within the "c_user" code, coupled with the title and URL of any video requested or obtained. *Id.* ¶ 27.

Collins is a Pearson subscriber and a Facebook user.[3] *Id.* ¶ 33. Collins became a Pearson digital subscriber by providing, among other things, his name and email address to register for an account. *Id.* Collins contends that he "requested or obtained video materials and/or services through Pearson.com." *Id.* ¶ 34. He contends that Pearson disclosed to Facebook his Facebook ID coupled with the specific titles and URLs of the videos and other services he requested or obtained from Pearson's website. *Id.* ¶ 35. He never consented, agreed, authorized, or otherwise permitted Pearson to disclose this information to Facebook. *Id.* ¶ 37.

Collins brings this putative class action on behalf of all Pearson subscribers who

---

[2] A cookie is "a small file or part of a file stored on a World Wide Web user's computer, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)." *Cookie*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/cookie.

[3] Collins alleges he has been a Pearson subscriber and has had a Facebook account "at all relevant times." Compl. ¶ 33. Because the class period begins March 15, 2021, the Court infers that Collins has been a Pearson subscriber and a Facebook user since at least that date. *Id.* ¶ 41.

requested or obtained video materials on Pearson's website and used Facebook during the time the Pixel was installed on Pearson's website. *Id.* ¶ 40. The class period is between March 15, 2021, and March 15, 2023 (the date the Complaint was filed). *Id.* ¶ 41.

## II.     Procedural History

On March 15, 2023, Collins filed the Complaint. On May 16, 2023, Pearson moved to dismiss, Dkt. 10, and filed a memorandum of law, Dkt. 11 ("Def. Mem."), and a declaration in support, Dkt. 12 ("Youssef Decl."). On May 18, 2023, the Court ordered Collins to either amend the Complaint or respond to the motion to dismiss. Dkt. 17. On June 13, 2023, Collins filed an opposition to the motion to dismiss. Dkt. 22 ("Pl. Mem."). On June 27, 2023, Pearson filed a reply. Dkt. 23 ("Reply"). Between August 2, 2023, and February 23, 2024, Collins filed six notices of supplemental authorities. Dkts. 34, 36–39.

## III.    Motion to Dismiss Under Rule 12(b)(1)

### A.  Applicable Legal Standards

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113 (citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citation omitted). Additionally, a court may properly refer to matters outside the pleadings when considering the existence of jurisdiction on a motion pursuant to Rule 12(b)(1). *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1010–11 (2d Cir. 1986).

In a motion to dismiss pursuant to Rule 12(b)(1), "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (citation omitted). When challenging the legal sufficiency, that challenge is "based solely on the allegations of the complaint or the complaint and exhibits attached to it," and thus "plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co., LLC,* 872 F.3d 114, 119 (2d Cir. 2017) (citation omitted). However, when a defendant makes a factual challenge, the defendant can "proffer[] evidence beyond the plaintiffs' pleading." *Id.* (cleaned up). In opposition to such a motion, a plaintiff must "come forward with evidence of their own to controvert that presented by the defendant," or may instead "rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Id.* (cleaned up).

**B. Discussion**

Pearson argues that the Complaint does not adequately plead an injury in-fact and thus Collins lacks Article III standing. The Court holds otherwise. The Complaint pleads a concrete, particularized injury to a legally protected interest of Collins': the disclosure of his video viewing history to Facebook.

The "irreducible constitutional minimum" of Article III standing consists of three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citation omitted). To satisfy the first element, which Pearson puts at issue here, "a plaintiff must show that he or she suffered

an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal quotation marks omitted). In determining what makes a harm concrete for purposes of Article III, "history and tradition offer a meaningful guide." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (citations and internal quotation marks omitted). Courts must "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (citation omitted).

Pearson makes three arguments why the Complaint does not meet these standards. Each fails.

***Conclusory allegations of injury***: Pearson argues that the Complaint fails to allege a cognizable Article III injury because it contains only sparse and conclusory allegations as to Collins' injury. Def. Mem. at 6–8. The Complaint, Pearson argues, does not specifically identify the services to which Collins subscribed, the specific videos he requested or obtained, the dates he requested or obtained these videos, where on Pearson's website the videos can be found, the disclosed Facebook ID, or the disclosed video title.

Viewing the Complaint's allegations in their entirety, these details are not needed to allege that Collins suffered an injury in-fact. The Complaint alleges that Pearson, as an across-the-board practice, disclosed to Facebook Collins' Facebook ID, and the titles and URLs of each of the videos and other services he requested or obtained from Pearson's website. Compl. ¶ 35. Even without the names of specific videos and the like, this adequately alleges concrete injury, in that Pearson "intentionally disclosed [Collins'] personally identifiable information" and his "video-watching activity" to Facebook "without [his] knowledge or consent" via the Pixel. *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 90 (S.D.N.Y. Apr. 24, 2023). The

Supreme Court has held that "disclosure of private information" is an intangible harm traditionally recognized as actionable in American courts. *TransUnion*, 594 U.S. at 425 (citing, *inter alia*, *Davis v. FEC*, 554 U.S. 724, 733 (2008)). And, specific to this statute, courts in this Circuit have held that "because the VPPA creates a specific right to relief for disclosures made in violation of the statute, a plaintiff asserting claims under the VPPA need only assert [his] information was wrongfully disclosed to have asserted an 'injury in fact' supporting Article III standing." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 668 (S.D.N.Y. 2015). The Complaint here clears that threshold. *See, e.g.*, *Carter*, 670 F. Supp. 3d at 90 (complaint alleged concrete injury under VPPA where plaintiff's video-watching and personal information was allegedly disclosed to Facebook); *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 283 (S.D.N.Y. 2023) (complaint alleged concrete injury under VPPA where plaintiff's personal information was allegedly disclosed to third party).

The specificity that Pearson demands—the titles of the videos Collins viewed and the dates he viewed them—is unnecessary given the well-pled allegation that Pearson, as a matter of course, shared such titles and dates with third parties, via the Pixel installed on its website that routinely transferred to Facebook a user's Facebook ID and their video-viewing history. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up). The Complaint's allegation here of an overarching business practice necessarily picks up the specific facts necessary to establish the claim. The Court rejects Pearson's first argument as an improper "attempt[] to devise [] additional pleading requirement[s]." *Austin-Spearman*, 98 F. Supp. 3d at 667.

***"John Roe"***:  Pearson also takes issue with the Complaint's references to a hypothetical "John Roe" subscriber.  Def. Mem. at 8–10.  Pearson argues that the Complaint's allegations concerning "an imaginary" or "hypothetical" person cannot satisfy Article III.  Pearson's argument attacks a straw man.  As reviewed above, the basis for the Complaint's claim to a cognizable injury are its specific allegations about named plaintiff Collins.  These are not imaginary.  The separate allegations about "John Roe" serve a different purpose, as the Complaint explains in a preface.  It states: "[F]or purposes of demonstrating in this complaint Pearson's practice of disclosing consumers' personally identifying information, Plaintiff created and used an exemplary account for 'John Roe.'"  Compl. ¶ 25 n.7.  The Complaint thereafter uses the "John Roe" account to illustrate how the Pixel functions, and to demonstrate the information it transmits from Pearson to Facebook when a user accesses a video on Pearson's website.  Compl. ¶ 24–29.  This narrative device in explaining the mechanical operation of Pearson's challenged practices does not undermine the adequacy of its pleading of an injury to Collins.

***Youssef Declaration***:  Finally, Pearson submits the declaration of David Youssef, a cybersecurity professional at FTI Consulting, as ostensibly factually undermining Collins's claim to satisfy Article III standing.  Although use of material outside the Complaint is proper on a Rule 12(b)(1) motion, the Youssef Declaration is ineffective for this purpose.

Pearson makes several arguments based on the declaration.

He first contends that a user's Facebook ID is submitted to Facebook by the user's browser, not by Pearson.  That argument challenges the causal connection between Pearson's conduct and Collins' injury, *see Lujan*, 504 U.S. at 560; Pearson argues that Collins' own web browser is responsible.  But that argument fails to defeat standing, because, as alleged, regardless

of the precise mechanism by which Collins' PII is transmitted to Facebook, it was Pearson's installation of the Pixel on its website that caused the transmission. That factual allegation, which Pearson does not refute, adequately supports the claim of causation of Collins' injury. As Judge Hellerstein put the point in a case with similar allegations: "By installing the Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within." *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 Civ. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022).

Pearson next argues that the information its Pixel transmits to Facebook is not legible to an ordinary person and requires deciphering to enable the embedded URL and the user's FID to be identified. This argument challenges whether the information transmitted is "personally identifiable information" within the VPPA. *See* 18 U.S.C. § 2710(b)(1) ("A video tape service provider who knowingly discloses, to any person, *personally identifiable information* concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d)."). Relatedly, Pearson argues that the information transmitted to Facebook does not actually reveal the title of the video. This argument challenges whether "specific video materials" are disclosed within the VPPA. *See* 18 U.S.C. § 2710(a)(3) ("[T]he term 'personally identifiable information' includes information which identifies a person as having requested or obtained *specific video materials* or services from a video tape service provider[.]"). These arguments, however, go to the merits of Collins' claim, not his standing to bring it. "Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [plaintiffs] could actually recover." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (cleaned up); *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.");

*Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) ("[T]his is a merits issue not necessary for us to consider here, and we decline to do so. The standing question is distinct from whether Carver has a cause of action."); *Am. Civil Liberties Union of N.M. v. Santillanes*, 546 F.3d 1313, 1319 (10th Cir. 2008) ("Standing is not a proxy for ruling on the merits and is determined at the outset of the lawsuit."); *Bond v. United States*, 564 U.S. 211, 219 (2011) ("[T]he question whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute."); *Martin*, 657 F. Supp. 3d at 283 ("[W]hether the precise disclosure is actionable under the VPPA is a question about the merits of [plaintiff's] claim, rather than his ability to bring his case in federal court.").

The Court therefore rejects Pearson's challenges to Collins' standing. The Complaint adequately alleges that Collins suffered an injury in fact caused by Pearson's conduct and redressable by a favorable court decision. The Court denies Pearson's Rule 12(b)(1) motion.

## IV. Motions to Dismiss Under Rules 8(a) and 12(b)(6)

### A. Applicable Legal Standards

#### 1. Rule 8(a)

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule "does not countenance pleadings that are conclusory; it requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

When a complaint fails to comply with these requirements, a district court may dismiss it. "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* Further, if the court dismisses the complaint under Rule 8, "it should generally give the plaintiff leave to amend." *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995).

### 2. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### 3. Interplay between Rules 8(a) and 12(b)(6)

Rule 12(b)(6) serves two purposes. One is to ensure that "consistent with Rule 8(a), a complaint includes sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Alharbi v. Miller*, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019), *aff'd in part, dismissed in part*, 829 F. App'x 570 (2d Cir. 2020) (citation and internal quotation marks

omitted).  "A motion to dismiss for a lack of plausibility argues that the plaintiff has not pled

enough facts to give rise to an inference that he is entitled to relief."  *Id.*  Second, Rule 12(b)(6)

"requires even a well-pled complaint to state a legally cognizable claim for relief."  *Id.*  The

Second Circuit thus has noted the "distinction between the notice requirements of Rule 8(a) and

the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be

granted."  *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004).  "A complaint could include a

wealth of specific and particular facts, which would otherwise meet the standard for plausibility,

but in some instances, no amount or combination of those facts could ever give rise to a violation

of law."  *Alharbi*, 368 F. Supp. 3d at 560.  Therefore, "even when a complaint is sufficient to

meet Rule 8(a)'s formal notice requirements, it will nonetheless be dismissed under Rule

12(b)(6) if the conduct alleged does not give rise to a violation of law."  *In re Ditech Holding

Corp.*, No. 19-10412 (JLG), 2023 WL 6798626, at *11 (Bankr. S.D.N.Y. Oct. 13, 2023).

### B. Discussion

Pearson moves to dismiss under Rule 8(a), for failure to give fair notice, and Rule

12(b)(6), for failure to state a claim.  Although arguments are interrelated, the Court, tracking the

Second Circuit's treatment of these pleading obligations as distinct, analyzes them in turn.

#### 1. Rule 8(a)

Pearson argues that the Complaint's factual allegations are too sparse to meet Rule 8(a)'s

fair notice requirement.  The Complaint, it argues, fails to allege that Collins "requested or

obtained a video from Pearson, that Pearson made a knowing disclosure of his identity and the

specific video title requested or obtained to someone, and that someone connected the two."

Def. Mem. at 13.

Pearson is wrong.  The Complaint squarely alleges that Collins "requested or obtained video materials and/or services through Pearson.com"; that "Pearson knowingly disclosed [his] Personal Viewing Information to Facebook" by transmitting "Collins' FID coupled with the specific title of video material and/or services he requested or obtained and URLs to access those videos"; and that Collins "never consented, agreed, authorized, or otherwise permitted [Pearson] to disclose his Personal Viewing Information to Facebook."  Compl. ¶¶ 34–37.  These allegations give Pearson "fair notice of the claim asserted so as to enable [Pearson] to answer." *Salahuddin*, 861 F.2d at 42.

To the extent Pearson faults the Complaint for not adding greater factual specificity—for example, by pleading the titles of the specific videos he requested, the dates he requested them, and the webpages he visited to access them—Pearson does not need such information to prepare a defense against Collins' claims.  The Complaint puts Pearson on notice of the factual basis for the claim of wrongdoing—that by virtue of Pearson's installation of the Pixel on its website, when Facebook user and Pearson subscriber Collins watched videos on Pearson's websites, reports of this activity were transmitted to Facebook.  These allegations enable Pearson to defend the case.  To guide its counsel in formulating discovery and defense strategy, Pearson does not need to know now whether Collins watched "The Godfather" or "Jaws" (or, more topical to Pearson's video repertoire, "Accounting Basics").

"Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is not meant to impose a great burden upon a plaintiff." *Iconix Brand Grp., Inc. v. Bongo Apparel, Inc.*, No. 06 Civ. 8195 (DLC), 2008 WL 2695090, at *3 (S.D.N.Y. July 8, 2008) (internal quotation marks omitted).  It "does not require 'detailed factual allegations.'" *Iqbal*, 556 U.S. at 67 (quoting *Twombly*, 550 U.S. at 555).  It merely demands more than "naked

assertion[s]" and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* Collins'
Complaint meets this modest requirement. *See, e.g.*, *DeCoursey v. Murad, LLC*, No. 22 Civ. 353
(AMN) (ML), 2023 WL 3478459, at *14 (N.D.N.Y. May 16, 2023) (describing Rule 8(a) as
encompassing a "bare-bones notice-pleading requirements"); *Harnage v. Lightner*, 916 F.3d 138,
141 (2d Cir. 2019) ("Dismissal . . . is usually reserved for those cases in which the complaint is
so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well
disguised.").

### 2. Rule 12(b)(6)

Under the VPPA, "[a] video tape service provider who knowingly discloses, to any
person, personally identifiable information concerning any consumer of such provider shall be
liable to the aggrieved person for [] relief." 18 U.S.C. § 2710(b)(1). Pearson argues that the
Complaint does not state a VPPA claim because Pearson's disclosures to Facebook (1) do not
include information capable of identifying a specific consumer; (2) do not include information
capable of identifying the "specific video materials" that consumer requested or obtained; and
(3) do not connect the consumer's identity to the specific video materials requested or obtained.
These arguments thus allege a failure to plead the VPPA's "personally identifiable information"
requirement. All three arguments fail.[4]

---

[4] Pearson's briefing separately suggests at points that it is repackaging its Rule 12(b)(1)
argument that it did not actually "disclose" any PII to Facebook, as it was the user's web browser
that did so. That argument is based on the Youssef Declaration, and factually contradicts the
Complaint. It thus is not appropriately considered under Rule 12(b)(6). On a motion to dismiss,
the Court must "accept[] all [of the complaint's] factual allegations as true and draw[] all
reasonable inferences in the plaintiff's favor." *See In re Gen. Elec. Sec. Litig.*, 844 F. App'x
385, 387 (2d Cir. 2021). Courts are not to "look beyond facts stated on the face of the complaint,
. . . documents appended to the complaint or incorporated in the complaint by reference, and . . .
matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir.
2016) (citation and internal quotation marks omitted). The Youssef Declaration is out of bounds
on a 12(b)(6) motion.

The VPPA defines "personally identifiable information" to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). In construing "personally identifiable information," courts have found that a tape service provider must have disclosed information that "at the very least, identif[ies] a *particular* person—not just an anonymous individual—and connect[s] this particular person with his or her viewing history." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015) (emphasis in original). There are thus "three distinct elements" in the PII definition: "the consumer's identity; the video material's identity; and the connection between them." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015).

  a. *User's Identity*

Pearson first argues that the "c_user cookie string" that contains a user's Facebook ID is not sufficient to "identi[fy] a person" because an ordinary person would not know that the c_user cookie's digits represented a user's Facebook ID. In the alternative, Pearson argues that even if the Facebook ID could be extracted and deciphered from the c_user cookie string, an ordinary person would not know how to use a user's Facebook ID to reveal that user's identity. Pearson's argument that the Facebook ID contained in a c_user cookie is not sufficiently obvious or specific to allow an ordinary person to identify a user, however, is foreclosed by precedent.

The VPPA does not precisely delineate "the scope of information encompassed by PII, and how, precisely, this information must identify a person." *Robinson*, 152 F. Supp. 3d at 180. The Second Circuit has not yet spoken on this point, but among other courts, "two approaches have emerged." *Golden v. NBCUniversal Media, LLC*, No. 22 Civ. 9858 (PAE), 2023 WL 5434378, at *6 (S.D.N.Y. Aug. 23, 2023). Under the broader approach, adopted by the First Circuit, PII encompasses "information reasonably and foreseeably likely to reveal which []

videos [a person] has obtained" to the *third party to whom the PII is disclosed. Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). Under the narrower approach, adopted by the Third and Ninth Circuits, PII requires the disclosure of "the kind of information that would readily permit an *ordinary person* to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016). Courts in this District have followed the narrower approach, keyed to an ordinary person's expectations and understanding.

Even applying the narrower, more demanding approach, however, courts in this District have uniformly held that disclosure of a "Facebook ID [] would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Golden,* 2023 WL 5434378, at *6; *see Lamb v. Forbes Media LLC*, No. 22 Civ. 06319 (ALC), 2023 WL 6318033, at *10–11 (S.D.N.Y. Sept. 28, 2023) (disclosure of Facebook ID constituted PII within the meaning of VPPA); *Czarnionka*, 2022 WL 17069810, at *3 ("Facebook need not link the disclosed FID to personal information obtained elsewhere. The FID itself represents a particular individual."); *cf. Robinson*, 152 F. Supp. 3d at 184 (distinguishing an anonymized Roku device serial number from a Facebook ID, which is "equivalent to a name—it stands in for a specific person, unlike a device identifier"). Courts outside this District have similarly consistently held that a Facebook ID constitutes PII under the VPPA. *See, e.g., Belozerov v. Gannett* Co., 646 F. Supp. 3d 310, 314 (D. Mass. 2022) (collecting cases) ("A Facebook ID meets the broad definition of PII in this circuit. . . . A Facebook ID is a unique identifier that allows anyone to discover the user's identity."); *Ellis v. Cartoon Network, Inc.*, No. 14 Civ. 484 (TWT), 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) ("[T]he disclosure of a Facebook ID, which can identify a specific person without any additional steps, does qualify as personally identifiable information."), *aff'd*

*on other grounds*, 803 F.3d 1251 (11th Cir. 2015); *In re Nickelodeon*, 827 F.3d at 289 n.174 (same, but noting that "even a numeric identifier might qualify as [PII]" in certain circumstances, and citing *In re Hulu's* holding that a Facebook ID constitutes PII because, unlike "unique, anonymous ID[s]," it "identifies the Hulu user's actual identity on Facebook"); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (declining to resolve question definitively, but noting that "[a] Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual").

Pearson's argument is thus foreclosed by precedent.  Courts applying the ordinary-person test developed by the First Circuit have consistently held that a Facebook ID readily permits an ordinary person to identify the particular user accessing or requesting a specific video.  In several of these cases, the Facebook ID was transmitted through a c_user cookie in a manner identical to the one alleged in Collins' Complaint.  *See, e.g.*, *Golden*, 2023 WL 5434378, at *7 (Facebook ID transmitted in c_user cookie); *Lamb*, 2023 WL 6318033, at *2 (same); *Czarnionka*, 2022 WL 17069810, at *3 (same).  Collins' Complaint adequately alleges that Pearson's transmission of his Facebook ID discloses his identity as required by the VPPA.

### b.  Specific Video Materials

Pearson next argues that the Complaint does not adequately plead the specific video material Collins requested or obtained.  As noted, the Complaint alleges that "Pearson discloses to Meta whether a video was requested [], the specific video name that the digital subscriber requested, the URL, and the digital subscriber's FID to Facebook in a single transmission."  Compl. ¶ 26.  And it illustrates the mechanism by which this disclosure occurs via a hypothetical user, "John Roe."  *Id.* ¶ 26.  Once the user requests this video, it alleges, Pearson discloses to

Facebook the name and the URL of the video. *See id.* p. 8 (schematic illustration using video entitled "Introduction to Accounting—Types of Accounting").

Pearson attempts to cloud the clarity of this pleading by asserting that in the Complaint's illustration, the video disclosed goes by a different title—not "Introduction to Accounting—Types of Accounting," but, rather, "Types of Accounting: Financial and Managerial"—with the implication being that the Complaint does not adequately allege disclosure of the video's name. Def. Mem. at 22. This attempt at playing gotcha is ill-conceived. Pearson relies for this argument on a separate part of the Complaint, page 6, which captures a screenshot of the video at issue, bearing the caption: "Concept Types of Accounting: Financial and Managerial." Compl. at 6. But there is no indication in that image (or anywhere else in the Complaint), that the caption "Types of Accounting: Financial and Managerial" is the video's *title*. Without more, the screenshot does not contradict the Complaint's well-pled allegations that the video title and URL were transmitted to Meta. *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").

*Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023), on which Pearson relies, is inapposite. The plaintiff there accessed webpages on People.com. Her complaint alleged that "the version of the Facebook Pixel used on People.com sends only the Facebook ID and the name of the webpage that a user accessed," but critically, it noted that "not all of People.com's content pages . . . include videos." *Id.* at 284. In dismissing for failure to state a VPPA claim, Judge Cote held it inadequate to allege merely "the name of the webpage" the plaintiff had accessed (People.com), as such did not allege essential information for a VPPA claim, to wit,

whether the accessed webpage contained videos. *Id.* ("[F]rom the information disclosed to Facebook by People.com, it would not even be clear if the person . . . is a consumer of video media," as the information disclosed would not reveal whether that person "requested or obtained specific video materials on that webpage."). Collins' Complaint does not suffer from that defect. It alleges, categorically, that "when a user clicks on and requests a video," "Pearson discloses to Meta whether a video was requested (in contrast to the user requesting non-video material), the specific video name that the digital subscriber requested, the URL, and the digital subscriber's FID to Facebook in a single transmission." Compl. ¶ 26.

### c.   *Connection Between User's Identity and Specific Video Materials*

Finally, Pearson argues that its disclosure to Facebook does not adequately connect the user's identity to the video material requested. Pearson represents that the user's identity is disclosed via the c_user cookie, whereas the specific video material disclosure occurs via the path.

Pearson's factual representation to this effect may or may not prove accurate, but it cannot be considered on this motion, as it is outside of—and contradicts the explicit allegations in—the Complaint. The Complaint alleges: "The disclosure of the FID is *coupled* with the title of the video the subscriber requested or obtained along with the URL for the video." *Id.* ¶ 27. It alleges that both sets of information are transmitted to Facebook simultaneously as a package. Other courts, analyzing comparable if not identical allegations of disclosures by defendants to Facebook via Facebook's Pixel, have found an adequate connection between the user's identity and the specific video material at issue. *See, e.g.*, *Lamb*, 2023 WL 6318033, at *11 (PII adequately alleged where Complaint alleged "that Defendant disclosed the Plaintiffs' Facebook IDs and the URLs—including the video title—of the videos they accessed"); *Harris v. Pub.*

*Broad. Serv.*, 662 F. Supp. 3d 1327, 1334 (N.D. Ga. 2023) ("[T]he bundling of the [Facebook ID] from the c_user cookie with the URLs of the videos Plaintiff watched," which "occurs on Defendant's website via the Facebook pixel," constitutes PII under the VPPA.); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1342 (N.D. Ga. 2022) ("[Plaintiff] adequately alleged that [defendant] disclosed her Facebook ID and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII, supporting a plausible claim under the VPPA."); *In re Hulu Priv. Litig.*, No. 11 Civ. 03764 (LB), 2014 WL 1724344, at *13 (N.D. Cal. Apr. 28, 2014) (denying summary judgment because it "could be a VPPA violation" that Hulu knew it was transmitting Facebook ID through c_user cookie, along with watch page and embedded video name); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1020–21 (D. Minn. 2023) (connection between disclosures of user's identity and specific video materials was plausibly alleged where complaint alleged that defendant "simultaneously disclosed [plaintiff's Facebook ID] and the name of the video/content that he viewed to Facebook via Facebook Pixel"; "connecting a Facebook ID to a specific person, a URL to a particular video, and the specific person to the particular video" is "a reasonably straightforward exercise"). The allegation in the Complaint here is equally to the effect that Collins' "Facebook ID was disclosed alongside the viewed video's URL and name" via the Pixel. It thus alleges a sufficient connection between the two. *Golden*, 2023 WL 5434378, at *6.

The Court accordingly denies Pearson's motion to dismiss under Rule 12(b)(6).

## V.     Motion to Strike Under Rule 12(f)

Finally, Pearson moves to strike the Complaint's class allegations under Rule 12(f).  It

contends that the Complaint's class definition impermissibly includes Pearson+ subscribers who

have agreed to arbitrate their claims against Pearson subject to a class action waiver.

Under Rule 12(f), a court may on a motion, "strike from a pleading an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

"Motions to strike are viewed with disfavor and infrequently granted."  *Emilio v. Sprint*

*Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (cleaned up).  "A motion to strike class

allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to

preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the

complaint, and before plaintiffs are permitted to complete the discovery to which they would

otherwise be entitled on questions relevant to class certification."  *Blagman v. Apple Inc.*, No. 12

Civ. 5453 (ALC) (JCF), 2013 WL 2181709, at *2 (S.D.N.Y. May 20, 2013) (ellipsis and internal

quotation marks omitted).

It is correct that "one circumstance where striking the class allegations may be

appropriate is where a contractual waiver clearly precludes the possibility that a plaintiff's claim

may be brought on a class-wide basis."  *Haymount Urgent Care PC v. GoFund Advance*, LLC,

635 F. Supp. 3d 238, 240–41 (S.D.N.Y. 2022).  But, for two reasons, the Court finds Pearson's

motion to strike the class allegations premature.  First, Pearson has not definitively shown that

the class waiver within the arbitration provision clearly applies so as to preclude the

participations of signatories in a class action.  Pearson has not moved to compel arbitration;

whether the class waiver has effect outside of the arbitration context has not been addressed; and

the validity, breadth, and import of the waiver and agreement have not been litigated.  Pearson

has not even come forward with an arbitration agreement with, or purported class action waiver

by, the named plaintiff, Collins. *Cf.* Def. Mem., Ex. 1 (generic Pearson Subscription

Agreement).[5]  Second, even assuming that some members of the putative class were ineligible to

participate, the remedy at this initial stage would almost certainly be to prune, rather than strike,

the class allegation.  It is thus premature to resolve these issues. *See, e.g., Mayfield v. Asta*

*Funding, Inc.,* 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015) (denying motion to strike as premature

because defendants had not yet proven that plaintiffs had "waived their class action rights and

established a 'meeting of the minds on all essential terms' of any such waiver" and because "the

mere possibility of individualized defenses will not preclude certification of a class where

common questions of law or fact predominate over questions affecting individual class

members"); *Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 WL 1299966, at *6–7

(S.D.N.Y. Mar. 21, 2019) (denying motion to strike as premature because the issue whether class

members "entered into arbitration agreements that included class-action waivers" "mirror[s] the

class certification inquiry" which should be decided at the class certification stage and because

the plaintiff "is not alleged to have himself signed an arbitration agreement, nor [was] there any

evidence . . . with respect to how many other putative class members" signed arbitration

agreements); *Rothstein v. Auto Club S.*, No. 15 Civ. 9391 (LAK) (RLE), 2017 WL 11455316, at

*4 (S.D.N.Y. Mar. 16, 2017), *report and recommendation adopted*, 2017 WL 1373914

(S.D.N.Y. Apr. 13, 2017) (finding motion to strike allegations based on existence of a mandatory

arbitration clause that precluded class actions claims premature because defendants "are basing

their argument against class claims on factual and legal disputes to be decided at a later point in

---

[5] *Camilo v. Uber Technologies*, No. 17 Civ. 9508 (AKH), 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018), on which Pearson relies, is inapposite, as the defendant there had moved to compel arbitration.

the litigation).  Accordingly, the Court denies Pearson's motion to strike, without prejudice to Pearson's right to pursue the same or similar such relief later in this litigation.

**CONCLUSION**

For the foregoing reasons, the Court denies Pearson's motions to dismiss and to strike. The Clerk of the Court is respectfully directed to terminate the motions pending at Dockets 10 and 16.

Pursuant to Rule 12(a)(4)(A), Pearson must answer the Complaint by March 15, 2024. By separate order, the Court will schedule an initial pretrial conference.


SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 1, 2024
       New York, New York